**CENTRAL BAG CO., INC., A Missouri Corporation, Appellant,**

v.

**W. SCOTT AND COMPANY, Respondent.**

**No. WD 33065.**

Missouri Court of Appeals, Western District.

Jan. 4, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 1, 1983.

Lee Goodman, Lee M. Nation, Kansas City, for appellant.

Suzanne Bocell Bradley, Brown, Douglas & Brown, St. Joseph, for respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

TURNAGE, Judge.

Central Bag Company brought suit against W. Scott and Company for breach of contract damages. A bench trial resulted in judgment for Scott. On this appeal, Central contends that the evidence showed the existence of a contract. Reversed and remanded for entry of judgment.

Central is a manufacturer of burlap and textile bags, and Scott manufactures products such as cattle dust bags, which contain varying amounts of burlap. In December of 1979, Scott contacted Central, and con-tracted to purchase four bales of forty inch, ten-ounce burlap at forty-six and one-half cents a yard, plus freight. The order was shipped and paid for.

On January 10, 1980, Scott again contacted Central, this time inquiring about purchasing burlap for the Spring of 1980. Scott concluded this phone conversation by ordering twenty-five bales of forty inch, ten-ounce burlap from Central, to be shipped in quantities of four bales at a time from January through June of 1980 at forty-nine cents per yard. Scott sent Central a purchase order to this effect which was signed and dated January 18, 1980. On that same date, Central sent Scott a signed sales contract with identical terms regarding subject matter, quantity, price, and method of delivery. In addition, the purchase order and the sales contract each contained certain additional differing terms relating to items such as the allocation of freight charges and dates of delivery.

On January 29, 1980, Scott contacted Central and directed them to ship the first installment of burlap. On January 30, 1980, four bales were received and paid for by Scott at forty-nine cents a yard. Then in mid February of 1980, Scott informed Central that it would not take any more burlap under the terms of the contract, because it disapproved of the clauses in Central's sales contract relating to open delivery dates and bunker fuel charges.[1] There was evidence that Scott's regular supplier of burlap had become unable to supply Scott in late 1979 and early 1980 due to the effects of the Soviet invasion of Afghanistan on world burlap market conditions.

In mid February of 1980 the burlap situation eased, and Scott resumed its dealings with its regular supplier, at a cost significantly below the cost which it had contracted for with Scott. Central remained willing to fulfill the agreement, and in July of 1980, sold the twenty-one bales of burlap remaining from its agreement with Scott at thirty-four cents a yard, for a "benefit of the bargain" loss of $5,880.

---

1. Bunker fuel charges are essentially freight charges for ocean transportation. The term derives from bunkers which held fuel in early day ships.

Scott does not dispute the fact that it entered into an oral contract with Central on January 10, 1980, regarding subject matter, quantity, price, and method of delivery. Its position is that the contract ceased to exist as a result of the fact that the confirmation forms contained additional and differing terms. Central, however, has not sought to recover under these additional differing terms, but rather has claimed damages only on the basis of the identical agreed upon terms. Thus, the fundamental issue in this case is whether a binding contract was entered into by Scott and Central, consisting of the agreed upon terms that Scott would purchase from Central twenty-five bales of forty inch ten-ounce burlap at forty-nine cents per yard, to be delivered four bales at a time as directed between January and July 1, of 1979. Since this case involves a transaction in goods, it is covered by the Uniform Commercial Code.[2] UCC § 2–102.

■ Cases in which an oral contract[3] is entered into and each party sends the other a written confirmation of the contract are governed by UCC §§ 2–207(1) and (2), which state:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

On first glance, it might seem that these sections do not apply to prior oral agreement cases, since these sections contemplate contract formation by written offer and acceptance. However, according to Official Comment 1 of UCC § 2–207, §§ 2–207(1) and (2) apply "where an agreement has been reached orally... and is followed by one or both of the parties sending formal memoranda embodying the terms so far agreed and adding terms not discussed." In addition, § 2–207(1) uses the term "written confirmation," and discusses the situation in which a written confirmation states terms "additional to or different from those... agreed upon," thus implying the existence of a prior oral agreement.

While there is no Missouri case on this point, this case is remarkably similar to *Harlow & Jones, Incorporated v. Advance Steel Company,* 424 F.Supp. 770 (D.Mich. 1976). In that case a telephone conversation between Harlow and Advance gave rise to a oral contract. Shortly after this agreement was reached each party mailed the other a confirmation form, which neither party ever signed or returned to the other party. The first two shipments on the contract were accepted and paid for by Advance, which then refused to accept the remaining shipments on the contract. The court held that the oral agreement between Harlow and Advance in combination with the fact that confirmation forms were sent resulted in a binding contract under UCC § 2–207.

■ Central's request for damages is based on UCC § 2–706, which allows a seller whose buyer has breached a contract to resell the goods concerned in a commercially reasonable manner, and to recover the

---

**2.** Missouri has adopted the Uniform Commercial Code, and the corresponding statutory sections are found in Chapter 400, RSMo.1978. For simplicity's sake, all citations in this case will be to the UCC section rather than to the Missouri statute.

**3.** The finding that an oral contract existed in this case is not precluded by the Statute of Frauds as set forth in UCC § 2–201, since this is an affirmative defense under Rule 55.08, and Scott failed to raise it.

difference between the resale price and the contract price.[4] Scott has made no claim that Central's resale price was not reasonable. In fact, it reflected a price per yard very close to the price that Scott had itself paid to its regular burlap supplier during the same period.

In conclusion, a contract existed between Central and Scott involving twenty-five bales of burlap, and this contract was not voidable at Scott's will. Scott's actions constituted a breach of contract, and Central has a right to damages as compensation for the breach. Thus, the trial court misapplied the law and the judgment must be reversed.

The judgment is reversed and this cause is remanded with directions to enter judgment for Central Bag Company in the amount of $5,880 together with costs.

All concur.

---

**4.** The statute also provides for recovery of incidental damages, but Central made no such claim.