**LUCHA, INC., Plaintiff,**

**v.**

**Edward GOEGLEIN, et al., Defendants.**

**No. 83–1607C(1).**

United States District Court,
E.D. Missouri, E.D.

Aug. 27, 1984.

William R. Bay, St. Louis, Mo., for plaintiff.

Mary M. Albert, Brighton, Ill., Charles P. Todt, Clayton, Mo., for defendants.

## MEMORANDUM

NANGLE, Chief Judge.

Plaintiff, Lucha, Inc., brought this action based on diversity jurisdiction to enforce a contract.

This case was tried to the Court sitting without a jury. The Court having considered the pleadings, the testimony, the documents in evidence and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of facts and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure. *Fed.R.Civ.P.* 52.

### A. FINDINGS OF FACT

1. Plaintiff, Lucha, Inc., is a Missouri corporation with its principal place of business in the Eastern District of Missouri.

2. At all material times, defendants Edward Goeglein and Christina Goeglein were residents and citizens of Illinois.

3. On February 4, 1983, plaintiff and defendants entered into a written agreement in Missouri. Under the terms of the agreement, plaintiff was to lease twelve video game machines to defendants for a period of six months, which was until August 4, 1983. Defendants did have an option to extend the lease with express written consent of both parties. Defendants could purchase the machines prior to the expiration of the lease, however.

4. Paragraph 6 of the agreement entitled "Purchase Guaranty" states:

> This Agreement places twelve (12) units listed on Exhibit A and subject to change only as specified in paragraph 5 above in LESSEES' place of business and LESSEES hereby agree to purchase at the expiration of this Agreement and its extensions the twelve (12) units in LES-

SEES' possession as of the last expiration of any unextended term hereof for the purchase price of $1,800.00 per unit.

\* \* \* \* \* \*

On the final day of the unextended term of this Agreement or such earlier date as Lessees may elect as provided above, LESSEES shall tender to LESSOR the purchase price indicated above and LESSOR shall provide a bill of sale in the form attached hereto as Exhibit B. LESSOR shall remove at that time any of LESSOR'S machines covered by this Agreement which have not been selected by LESSEES for purchase.

5. The agreement was entered into on February 4, 1983, and was signed by defendants Edward and Christina Goeglein, and by Lucia Rohrer on behalf of plaintiff. After discussions with defendants, Lucia Rohrer prepared the agreement and directed her secretary to type it.

6. The parties had prior dealings with each other. An agreement between the same parties was entered into on August 22, 1982, for the placement of seven video game machines in defendants' Brighton, Illinois arcade. This agreement was drawn up by the parties' attorneys, and the "Purchase Guaranty" clause required defendants to purchase at least five of the seven units. Defendants ultimately purchased six units in accordance with the terms of the agreement.

7. Mrs. Rohrer patterned the February 4 agreement after the prior agreement, and most of the language remained the same. The changes made to the "Purchase Guaranty" clause included the number of machines to be purchased and the purchase prices of some of the machines.

8. Defendants knew that the form of the second agreement was the same as the first, and they consented to not having an attorney present during the execution of the February 4 agreement. Defendants were anxious to receive the video machines before Mrs. Rohrer left town. They spent only a few minutes studying the second agreement.

9. On June 16, 1983, defendants gave plaintiff written notice that they were abandoning the video machines because they could no longer afford to keep their business running. They called upon plaintiff to remove the machines from the arcade.

10. Plaintiff removed eleven machines from defendants' business on June 19, 1983. Defendants had in fact purchased one of the twelve machines at an earlier date. Plaintiff incurred $1,009.90 as expenses in removing the equipment from defendants' premises, storing the equipment and advertising it for resale. Plaintiff was able to sell one machine for $950, and has estimated the value of the remaining machines at $200 each. Mrs. Rohrer and her husband are familiar with the video machine market, and defendants have not produced any evidence to contradict the value placed on the machines by plaintiff.

11. The contract price of the eleven machines which defendants did not purchase is $20,000.

## B. CONCLUSIONS OF LAW

This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1332. Plaintiff claims that defendants are liable to it under the terms of the February 4, 1983, agreement for the loss it suffered as a result of defendants' breach. Defendants maintain that they never breached the contract. They argue that they agreed only to purchase the video machines upon expiration of lease term at their option, and they chose not to exercise that option. They additionally assert that they were not obligated to purchase the video games because plaintiff removed the units from the premises before the expiration of the lease term.

The issue for resolution involves the construction of the contract to determine whether defendants obligated themselves to purchase the video machines. Missouri law applies upon agreement by the parties.

■ The terms of the contract clearly indicate that defendants were bound to purchase the eleven machines in question.

Unequivocal words must be given their plain and ordinary meanings. *Hamiltonian Federal Savings & Loan Association v. Reliance Insurance Co.*, 527 S.W.2d 440, 442 (Mo.App.1975); *Jordan v. United Equitable Life Insurance Co.*, 486 S.W.2d 664, 666–67 (Mo.App.1972). The "Purchase Guaranty" section of the agreement plainly indicates that the parties contemplated the purchase of all the units by defendants at the end of the lease term.

■ Defendants maintain that because they were not in possession in the machines when the lease term expired, they were relieved of their commitment to purchase them. They point to the language, "LESSEES hereby agree to purchase at the expiration of this Agreement and its extensions the twelve (12) units in LESSEES' *possession*" (emphasis added). This Court is not convinced that insertion of the term "possession" creates an ambiguity in the contract. The contract necessarily contemplates retention of the machines by defendants throughout the term of the agreement. It was only because of defendants' voluntary abandonment of the units that they lost possession of them. Defendants cannot benefit from their own wrongful act of abandoning the video machines.

■ Defendants also argue that the inclusion in the agreement of the sentence "LESSOR shall remove at [the expiration of the lease term] any of LESSOR'S machines covered by this Agreement which have not been selected by LESSEES for purchase," creates an ambiguity. Apart from the appearance of this statement in the agreement, no other provisions suggest that defendants were not obligated to purchase the machines, however. In fact, all other language strongly indicates that defendants were to make the purchases. There was even a bill of sale form containing purchase prices attached to the agreement as Exhibit B. This Court concludes that the agreement was not ambiguous as to defendants' obligation to purchase twelve video machines, despite the appearance of one sentence in the agreement to suggest otherwise. The amount of clear

and unambiguous language mandating the purchase leads to this conclusion.

■ Even if this final provision of the Purchase Guaranty clause does create an ambiguity, the ambiguity must be resolved in favor of plaintiff. This Court considers evidence of the acts and intention of the parties, as well as their prior dealings in construing the ambiguity. § 400.1–205(1) and (3) R.S.Mo. (1978). Defendants knew that the agreement was patterned after the August 22, 1982, agreement requiring the purchase of a designated number of machines. Furthermore, defendants made the requisite number of purchases in accordance with the prior contract. Defendants' conduct suggests that they understood their obligations under the second agreement to include purchases of the video machines. Moreover, the manner in which the second agreement was reached accounts for the inclusion of the arguably ambiguous language in the contract. Mrs. Rohrer used the first contract as a base, and penciled in the alterations which would make up the second agreement. The last sentence of the Purchase Guaranty provision appeared in the first contract because defendants were not obligated to purchase all the machines there. It thus appears that this sentence was never removed when the second contract was finalized. It has no relation to the rest of the agreement, however. This Court does not construe it as creating an option for defendants whether to purchase the machines or not.

■ Defendants argue that because plaintiff drafted the agreement, plaintiff should bear the responsibility for any ambiguity. Although ambiguities are to be construed against the drafter, this rule only applies in the absence of evidence which sheds light upon the intentions of the parties. *Rouggly v. Whitman*, 592 S.W.2d 516, 523 (Mo.App.1979). There is sufficient evidence in this case regarding the parties intentions as to avoid application of this rule.

■ This Court additionally concludes that the letter of June 16, 1983, which

notified plaintiff of defendants' abandonment of the machines was an anticipatory repudiation. It manifested a positive intention not to perform the remaining conditions of the agreement. *Gateway Aviation, Inc. v. Cessna Aircraft,* 577 S.W.2d 860, 862 (Mo.App.1978); § 400.2–610 R.S.Mo. (1978). Such repudiation gives rise to plaintiff's right to recover damages for the loss to it.

Plaintiff brought evidence to establish the value of its losses, while defendants presented none to dispute the figures or establish their unreasonableness. The expenses incurred by plaintiff in removing the machines from defendants' premises, storing them, and advertising them for resale totaled $1,009.90. In addition, plaintiff is entitled to the difference between defendants' purchase price of the machines and either the resale price or the fair market value of the same machines. *Central Bag Co., Inc. v. W. Scott & Co.,* 647 S.W.2d 828, 830–31 (Mo.App.1983); § 400.2–706 R.S.Mo. (1978). This figure is $17,050. Therefore, plaintiff's total damages are $18,059.90.