**William S. KLOCEK, Plaintiff,**

v.

**GATEWAY, INC., et al., Defendants.**

**No. CIV. A. 99–2499–KHV.**

United States District Court,
D. Kansas.

June 15, 2000.

William S. Klocek, Parkville, MO, pro se.

R. Lawrence Ward, Richard M. Paul, III, Jamee Maurer Klein, Shughart, Thomson & Kilroy, P.C., Kansas City, MO, for Gateway, Inc.

Samuel P. Logan, James K. Logan, Logan Law Firm LLC, Olathe, KS, for Hewlett–Packard, Inc.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

William S. Klocek brings suit against Gateway, Inc. and Hewlett–Packard, Inc. on claims arising from purchases of a Gateway computer and a Hewlett–Packard scanner. This matter comes before the Court on the *Motion to Dismiss* (Doc. # 6) which Gateway filed November 22, 1999 and *Defendant Hewlett–Packard, Inc.'s Motion To Dismiss, Or In The Alternative For Stay Of Proceedings* (Doc. # 16) filed December 22, 1999, the *Motion* (Doc. # 2) to certify a class which plaintiff filed October 29, 1999, the *Motion For Sanctions, Expenses and Punitives [sic]* (Doc. # 11) which plaintiff filed December 3, 1999, the *Motion for a Writ of Certiorari* (Doc. # 12) which plaintiff filed December 6, 1999, and the *Motion for Verification* (Doc. # 24) which plaintiff filed January 25, 2000. For reasons stated below, the Court overrules Gateway's motion to dismiss, sustains Hewlett–Packard's motion to dismiss, and overrules the motions filed by plaintiff.

### A. Gateway's Motion to Dismiss

Plaintiff brings individual and class action claims against Gateway, alleging that it induced him and other consumers to purchase computers and special support packages by making false promises of technical support. *Complaint,* ¶¶ 3 and 4. Individually, plaintiff also claims breach of contract and breach of warranty, in that Gateway breached certain warranties that its computer would be compatible with standard peripherals and standard internet services. *Complaint,* ¶¶ 2, 5, and 6.

Gateway asserts that plaintiff must arbitrate his claims under Gateway's Standard Terms and Conditions Agreement ("Standard Terms"). Whenever it sells a computer, Gateway includes a copy of the Standard Terms in the box which contains the computer battery power cables and instruction manuals. At the top of the first page, the Standard Terms include the following notice:

NOTE TO THE CUSTOMER:

This document contains Gateway 2000's Standard Terms and Conditions. By keeping your Gateway 2000 computer system beyond five (5) days after the date of delivery, you accept these Terms and Conditions.

The notice is in emphasized type and is located inside a printed box which sets it apart from other provisions of the document. The Standard Terms are four pages long and contain 16 numbered paragraphs. Paragraph 10 provides the following arbitration clause:

> DISPUTE RESOLUTION. Any dispute or controversy arising out of or relating to this Agreement or its interpretation shall be settled exclusively and finally by arbitration. The arbitration shall be conducted in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce. The arbitration shall be conducted in Chicago, Illinois, U.S.A. before a sole arbitrator. Any award rendered in any such arbitration proceeding shall be final and binding on each of the parties, and judgment may be entered thereon in a court of competent jurisdiction.[1]

■■■■ Gateway urges the Court to dismiss plaintiff's claims under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* The FAA ensures that written arbitration agreements in maritime transactions and transactions involving interstate commerce are "valid, irrevocable, and enforceable." 9 U.S.C. § 2.[2] Federal policy favors arbitration agreements and requires that we "rigorously enforce" them. *Shearson/American Exp., Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158, (1985)); *Moses,* 460 U.S. at 24, 103 S.Ct. 927. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses,* 460 U.S. at 24–25, 103 S.Ct. 927.

FAA Section 3 states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Although the FAA does not expressly provide for dismissal, the Tenth Circuit has affirmed dismissal where the applicant did not request a stay. *See Armijo v. Prudential Ins. Co. of Am.,* 72 F.3d 793, 797 (10th Cir.1995). Here, neither Gateway nor plaintiff requests a stay. Accordingly, the Court concludes that dismissal is appropriate if plaintiff's claims are arbitrable.[3] *Accord Fedmet Corp. v.*

---

1. Gateway states that after it sold plaintiff's computer, it mailed all existing customers in the United States a copy of its quarterly magazine, which contained notice of a change in the arbitration policy set forth in the Standard Terms. The new arbitration policy afforded customers the option of arbitrating before the International Chamber of Commerce ("ICC"), the American Arbitration Association ("AAA"), or the National Arbitration Forum ("NAF") in Chicago, Illinois, or any other location agreed upon by the parties. Plaintiff denies receiving notice of the amended arbitration policy. Neither party explains why—if the arbitration agreement was an enforceable contract—Gateway was entitled to unilaterally amend it by sending a magazine to computer customers.

2. The FAA does not create independent federal-question jurisdiction; rather, "there must be diversity of citizenship or some other independent basis for federal jurisdiction" before the Court may act. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In this case, plaintiff asserts diversity jurisdiction.

3. It is not clear whether Gateway asks the Court to compel arbitration in addition to dismissal. *Compare Motion to Dismiss* (Doc.

*M/V BUYALYK,* 194 F.3d 674, 678 (5th Cir.1999) (dismissal appropriate if all issues raised before court are arbitrable); *Sparling v. Hoffman Constr. Co.,* 864 F.2d 635, 638 (9th Cir.1988); (district court had discretion to dismiss arbitrable claims); *see also Black & Veatch Int'l Co. v. Wartsila NSD North Am., Inc.,* 1998 WL 953966, Case No. 97–2556–GTV (D.Kan. Dec. 17, 1998) (dismissing case and compelling arbitration).

 Gateway bears an initial summary-judgment-like burden of establishing that it is entitled to arbitration. *See, e.g., Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54 n.9 (3d Cir.1980) (standard on motion to compel arbitration is same as summary judgment standard); *Doctor's Assoc., Inc. v. Distajo,* 944 F.Supp. 1010, 1014 (D.Conn.1996), *aff'd,* 107 F.3d 126 (2d Cir.1997) (same); *Dougherty v. Mieczkowski,* 661 F.Supp. 267, 270 n. 1 (D.Del.1987). Thus, Gateway must present evidence sufficient to demonstrate the existence of an enforceable agreement to arbitrate. *See, e.g., Oppenheimer & Co. v. Neidhardt,* 56 F.3d 352, 358 (2d Cir. 1995). If Gateway makes such a showing, the burden shifts to plaintiff to submit evidence demonstrating a genuine issue for trial. *Id.; see also Naddy v. Piper Jaffray, Inc.,* 88 Wash.App. 1033, 1997 WL 749261, *2, Case Nos. 15431–9–III, 15681–8–III (Wash.App. Dec.4, 1997). In this case, Gateway fails to present evidence establishing the most basic facts regarding the transaction. The gaping holes in the evidentiary record preclude the Court from determining what state law controls the formation of the contract in this case and, consequently, prevent the Court from agreeing that Gateway's motion is well taken.

 Before granting a stay or dismissing a case pending arbitration, the Court must determine that the parties have a written agreement to arbitrate. *See* 9 U.S.C. §§ 3 and 4; *Avedon Engineering, Inc. v. Seatex,* 126 F.3d 1279, 1283 (10th Cir.1997). When deciding whether the parties have agreed to arbitrate, the Court applies ordinary state law principles that govern the formation of contracts. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). The existence of an arbitration agreement "is simply a matter of contract between the parties; [arbitration] is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *Avedon,* 126 F.3d at 1283 (quoting *Kaplan,* 514 U.S. at 943–945, 115 S.Ct. 1920). If the parties dispute making an arbitration agreement, a jury trial on the existence of an agreement is warranted if the record reveals genuine issues of material fact regarding the parties' agreement. *See Avedon,* 126 F.3d at 1283.

 Before evaluating whether the parties agreed to arbitrate, the Court must determine what state law controls the formation of the contract in this case. *See id.* at 1284. In diversity actions, the Court applies the substantive law, including choice of law rules, that Kansas state courts would apply. *See Moore v. Subaru of Am.,* 891 F.2d 1445, 1448 (10th Cir. 1989). Kansas courts apply the doctrine of *lex loci contractus,* which requires that the Court interpret the contract according to the law of the state in which the parties performed the last act necessary to form the contract. *See Missouri Pac. R.R. Co. v. Kansas Gas and Elec. Co.,* 862 F.2d 796, 798 n. 1 (10th Cir.1988) (citing *Simms v. Metropolitan Life Ins. Co.,* 9 Kan.App.2d 640, 642–43, 685 P.2d 321 (1984)).

The parties do not address the choice of law issue, and the record is unclear where they performed the last act necessary to

# 6), p. 2 (Gateway "requests this Court to dismiss the complaint ... so that [plaintiff] can pursue his arbitration remedy"); *Memorandum in Support of Motion to Dismiss* (Doc. # 8), p. 5 ("this action should be dismissed and plaintiff ordered to pursue his remedy through arbitration"); *Reply Memorandum in Support of Motion to Dismiss* (Doc. # 14), p. 3 ("this action should be dismissed so that plaintiff can pursue his arbitration remedy").

complete the contract. Gateway presents affidavit testimony that it shipped a computer to plaintiff on or about August 31, 1997, *Affidavit of David Blackwell,* ¶ 5 (attached to *Memorandum in Support of Motion to Dismiss* (Doc. # 8)), but it provides no details regarding the transaction. Plaintiff's complaint alleges that plaintiff lives in Missouri and, if Gateway shipped his computer, it presumably shipped it to Missouri. *See Complaint,* p. 1 (Doc. # 1). In his response to Gateway's motion, however, plaintiff states that on August 27, 1997 he purchased the computer in person at the Gateway store in Overland Park, Kansas, and took it with him at that time. *Response to Motion to Dismiss,* ¶¶ 2(b) and 2(d) (Doc. # 9). Depending on which factual version is correct, it appears that the parties may have performed the last act necessary to form the contract in Kansas (with plaintiff purchasing the computer in Kansas), Missouri (with Gateway shipping the computer to plaintiff in Missouri), or some unidentified other states (with Gateway agreeing to ship plaintiff's catalog order and/or Gateway actually shipping the order).[4]

The Court discerns no material difference between the applicable substantive law in Kansas and Missouri and—as to those two states—it perhaps would not need to resolve the choice of law issue at this time. *See Avedon,* 126 F.3d at 1284 (choice of law analysis unnecessary if relevant states have enacted identical controlling statutes); *see also Missouri Pacific,* 862 F.2d at 798 n. 1 (applying Kansas law where record did not indicate where final act occurred and parties did not raise issue); *Phillips Petrol. Co. v. Shutts,* 472

U.S. 797, 816, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) ("There can be no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit").[5]

The Uniform Commercial Code ("UCC") governs the parties' transaction under both Kansas and Missouri law. *See* K.S.A. § 84-2-102; V.A.M.S. § 400.2-102 (UCC applies to "transactions in goods."); Kansas Comment 1 (main thrust of Article 2 is limited to sales); K.S.A. § 84-2-105(1) V.A.M.S. § 400.2-105(1) ("'Goods' means all things ... which are movable at the time of identification to the contract for sale ...."). Regardless whether plaintiff purchased the computer in person or placed an order and received shipment of the computer, the parties agree that plaintiff paid for and received a computer from Gateway. This conduct clearly demonstrates a contract for the sale of a computer. *See, e.g., Step–Saver Data Sys., Inc. v. Wyse Techn.,* 939 F.2d 91, 98 (3d Cir.1991). Thus the issue is whether the contract of sale includes the Standard Terms as part of the agreement.

State courts in Kansas and Missouri apparently have not decided whether terms received with a product become part of the parties' agreement. Authority from other courts is split. *Compare Step–Saver,* 939 F.2d 91 (printed terms on computer software package not part of agreement); *Arizona Retail Sys., Inc. v. Software Link, Inc.,* 831 F.Supp. 759 (D.Ariz.1993) (license agreement shipped with computer software not part of agreement); *and U.S. Surgical Corp. v. Orris, Inc.,* 5 F.Supp.2d 1201 (D.Kan.1998) (single use restriction on product package not binding agree-

**4.** While Gateway may have shipped the computer to plaintiff in Missouri, the record contains no evidence regarding how plaintiff communicated his order to Gateway, where Gateway received plaintiff's order or where the shipment originated.

**5.** Paragraph 9 of the Standard Terms provides that "[t]his Agreement shall be governed by the laws of the State of South Dakota, without giving effect to the conflict of laws rules thereof." Both Kansas and Missouri

recognize choice-of-law provisions, so long as the transaction at issue has a "reasonable relation" to the state whose law is selected. K.S.A. § 84-1-105(1); Mo.Rev.Stat. § 400.1-105(1). At this time, because it must first determine whether the parties ever agreed to the Standard Terms, the Court does not decide whether Kansas or Missouri (or some other unidentified state) would recognize the choice of law provision contained in the Standard Terms.

ment); *with Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir.), *cert. denied*, 522 U.S. 808, 118 S.Ct. 47, 139 L.Ed.2d 13 (1997) (arbitration provision shipped with computer binding on buyer); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir.1996) (shrinkwrap license binding on buyer);[6] *and M.A. Mortenson Co., Inc. v. Timberline Software Corp.*, 140 Wash.2d 568, 998 P.2d 305 (2000) (following *Hill* and *ProCD* on license agreement supplied with software).[7] It appears that at least in part, the cases turn on whether the court finds that the parties formed their contract *before* or *after* the vendor communicated its terms to the purchaser. *Compare Step-Saver*, 939 F.2d at 98 (parties' conduct in shipping, receiving and paying for product demonstrates existence of contract; box top license constitutes proposal for additional terms under § 2–207 which requires express agreement by purchaser); *Arizona Retail*, 831 F.Supp. at 765 (vendor entered into contract by agreeing to ship goods, or at latest by shipping goods to buyer; license agreement constitutes proposal to modify agreement under § 2–209 which requires express assent by buyer); *and Orris*, 5 F.Supp.2d at 1206 (sales contract concluded when vendor received consumer orders; single-use language on product's label was proposed modification under § 2–209 which requires express assent by purchaser); *with ProCD*, 86 F.3d at 1452 (under § 2–204 vendor, as master of offer, may propose limitations on kind of

conduct that constitutes acceptance; § 2–207 does not apply in case with only one form); *Hill*, 105 F.3d at 1148–49 (same); *and Mortenson*, 998 P.2d at 311–314 (where vendor and purchaser utilized license agreement in prior course of dealing, shrinkwrap license agreement constituted issue of contract formation under § 2–204, not contract alteration under § 2–207).

Gateway urges the Court to follow the Seventh Circuit decision in *Hill*. That case involved the shipment of a Gateway computer with terms similar to the Standard Terms in this case, except that Gateway gave the customer 30 days—instead of 5 days—to return the computer. In enforcing the arbitration clause, the Seventh Circuit relied on its decision in *ProCD*, where it enforced a software license which was contained inside a product box. *See Hill*, 105 F.3d at 1148–50. In *ProCD*, the Seventh Circuit noted that the exchange of money frequently precedes the communication of detailed terms in a commercial transaction. *See ProCD*, 86 F.3d at 1451. Citing UCC § 2–204, the court reasoned that by including the license with the software, the vendor proposed a contract that the buyer could accept by using the software after having an opportunity to read the license.[8] *ProCD*, 86 F.3d at 1452. Specifically, the court stated:

> A vendor, as master of the offer, may invite acceptance by conduct, and may propose limitations on the kind of con-

---

**6.** The term "shrinkwrap license" gets its name from retail software packages that are covered in plastic or cellophane "shrinkwrap" and contain licenses that purport to become effective as soon as the customer tears the wrapping from the package. *See ProCD*, 86 F.3d at 1449.

**7.** The *Mortenson* court also found support for its holding in the proposed Uniform Computer Information Transactions Act ("UCITA") (formerly known as proposed UCC Article 2B) (text located at www.law.upenn.edu/library/ulc/ucita/UCITA_99.htm), which the National Conference of Commissioners on Uniform State Laws approved and recommended for enactment by the states in July 1999. *See Mortenson*, 998 P.2d at 310 n. 6, 313 n. 10. The proposed UCITA, however, would not

apply to the Court's analysis in this case. The UCITA applies to computer information transactions, which are defined as agreements "to create, modify, transfer, or license computer information or informational rights in computer information." UCITA, §§ 102(11) and 103. In transactions involving the sale of computers, such as our case, the UCITA applies only to the computer programs and copies, not to the sale of the computer itself. *See* UCITA § 103(c)(2).

**8.** Section 2–204 provides: "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such contract." K.S.A. § 84–2–204; V.A.M.S. § 400.2–204.

duct that constitutes acceptance. A buyer may accept by performing the acts the vendor proposes to treat as acceptance.

*ProCD,* 86 F.3d at 1452. The *Hill* court followed the *ProCD* analysis, noting that "[p]ractical considerations support allowing vendors to enclose the full legal terms with their products." *Hill,* 105 F.3d at 1149.[9]

■ The Court is not persuaded that Kansas or Missouri courts would follow the Seventh Circuit reasoning in *Hill* and *ProCD.* In each case the Seventh Circuit concluded without support that UCC § 2-207 was irrelevant because the cases involved only one written form. *See ProCD,* 86 F.3d at 1452 (citing no authority); *Hill,* 105 F.3d at 1150 (citing *ProCD* ). This conclusion is not supported by the statute or by Kansas or Missouri law. Disputes under § 2-207 often arise in the context of a "battle of forms," *see, e.g., Diatom, Inc. v. Pennwalt Corp.,* 741 F.2d 1569, 1574 (10th Cir.1984), but nothing in its language precludes application in a case which involves only one form. The statute provides:

> Additional terms in acceptance or confirmation.
>
> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract [if the contract is not between merchants]. . . .

K.S.A. § 84-2-207; V.A.M.S. § 400.2-207. By its terms, § 2-207 applies to an acceptance or written confirmation. It states nothing which requires another form before the provision becomes effective. In fact, the official comment to the section specifically provides that §§ 2-207(1) and (2) apply "where an agreement has been reached orally . . . and is followed by one or both of the parties sending formal memoranda embodying the terms so far agreed and adding terms not discussed." Official Comment 1 of UCC § 2-207. Kansas and Missouri courts have followed this analysis. *See Southwest Engineering Co. v. Martin Tractor Co.,* 205 Kan. 684, 695, 473 P.2d 18, 26 (1970) (stating in dicta that § 2-207 applies where open offer is accepted by expression of acceptance in writing or where oral agreement is later confirmed

---

9. Legal commentators have criticized the reasoning of the Seventh Circuit in this regard. *See, e.g.,* Jean R. Sternlight, *Gateway Widens Doorway to Imposing Unfair Binding Arbitration on Consumers,* Fla. Bar J., Nov. 1997, at 8, 10–12 (outcome in *Gateway* is questionable on federal statutory, common law and constitutional grounds and as a matter of contract law and is unwise as a matter of policy because it unreasonably shifts to consumers search cost of ascertaining existence of arbitration clause and return cost to avoid such clause); Thomas J. McCarthy et al., *Survey: Uniform Commercial Code,* 53 Bus. Law. 1461, 1465–66 (Seventh Circuit finding that UCC § 2–207 did not apply is inconsistent with official comment); Batya Goodman, *Honey, I Shrink-Wrapped the Consumer: the Shrinkwrap Agreement as an Adhesion Contract,* 21 Cardozo L.Rev. 319, 344–352 (Seventh Circuit failed to consider principles of adhesion contracts); Jeremy Senderowicz, *Consumer Arbitration and Freedom of Con-* tract: *A Proposal to Facilitate Consumers' Informed Consent to Arbitration Clauses in Form Contracts,* 32 Colum. J.L. & Soc. Probs. 275, 296–299 (judiciary (in multiple decisions, including *Hill* ) has ignored issue of consumer consent to an arbitration clause). Nonetheless, several courts have followed the Seventh Circuit decisions in *Hill* and *ProCD. See, e.g., M.A. Mortenson Co., Inc. v. Timberline Software Corp.,* 140 Wash.2d 568, 998 P.2d 305 (license agreement supplied with software); *Rinaldi v. Iomega Corp.,* 1999 WL 1442014, Case No. 98C–09–064–RRC (Del.Super. Sept. 3, 1999) (warranty disclaimer included inside computer Zip drive packaging ); *Westendorf v. Gateway 2000, Inc.,* 2000 WL 307369, Case No. 16913 (Del. Ch. March 16, 2000) (arbitration provision shipped with computer); *Brower v. Gateway 2000, Inc.,* 246 A.D.2d 246, 676 N.Y.S.2d 569 (N.Y.App.Div.1998) (same); *Levy v. Gateway 2000, Inc.,* 1997 WL 823611, 33 UCC Rep. Serv.2d 1060 (N.Y.Sup. Oct. 31, 1997) (same).

in writing);[10] *Central Bag Co. v. W. Scott and Co.,* 647 S.W.2d 828, 830 (Mo.App. 1983) (§§ 2–207(1) and (2) govern cases where one or both parties send written confirmation after oral contract). Thus, the Court concludes that Kansas and Missouri courts would apply § 2–207 to the facts in this case. *Accord Avedon,* 126 F.3d at 1283 (parties agree that § 2–207 controls whether arbitration clause in sales confirmation is part of contract).

In addition, the Seventh Circuit provided no explanation for its conclusion that "the vendor is the master of the offer." *See ProCD,* 86 F.3d at 1452 (citing nothing in support of proposition); *Hill,* 105 F.3d at 1149 (citing *ProCD* ). In typical consumer transactions, the purchaser is the offeror, and the vendor is the offeree. *See Brown Mach., Div. of John Brown, Inc. v. Hercules, Inc.,* 770 S.W.2d 416, 419 (Mo. App.1989) (as general rule orders are considered offers to purchase); *Rich Prods. Corp. v. Kemutec Inc.,* 66 F.Supp.2d 937, 956 (E.D.Wis.1999) (generally price quotation is invitation to make offer and purchase order is offer). While it is possible for the vendor to be the offeror, *see Brown Machine,* 770 S.W.2d at 419 (price quote can amount to offer if it reasonably appears from quote that assent to quote is all

that is needed to ripen offer into contract), Gateway provides no factual evidence which would support such a finding in this case. The Court therefore assumes for purposes of the motion to dismiss that plaintiff offered to purchase the computer (either in person or through catalog order) and that Gateway accepted plaintiff's offer (either by completing the sales transaction in person or by agreeing to ship and/or shipping the computer to plaintiff).[11] *Accord Arizona Retail,* 831 F.Supp. at 765 (vendor entered into contract by agreeing to ship goods, or at latest, by shipping goods).

 Under § 2–207, the Standard Terms constitute either an expression of acceptance or written confirmation. As an expression of acceptance, the Standard Terms would constitute a counter-offer only if Gateway expressly made its acceptance conditional on plaintiff's assent to the additional or different terms. K.S.A. § 84–2–207(1); V.A.M.S. § 400.2–207(1). "[T]he conditional nature of the acceptance must be clearly expressed in a manner sufficient to notify the offeror that the offeree is unwilling to proceed with the transaction unless the additional or different terms are included in the contract." *Brown Machine,* 770 S.W.2d at 420.[12]

**10.** In *Southwest Engineering,* the court was concerned with the existence of an enforceable contract under the UCC statute of frauds and it determined that the parties' notes satisfied the writing requirement. It found that a subsequent letter which contained additional material terms did not become part of the agreement under § 2–207, however, because the parties did not expressly agree to the change in terms. *See Southwest Engineering,* 205 Kan. at 693–94, 473 P.2d at 25. The court further found that § 2–207 did not apply to its analysis because at the time of the letter, the parties had already memorialized the agreement in writing and there was no outstanding offer to accept or oral agreement to confirm. *See Southwest Engineering,* 205 Kan. at 695, 473 P.2d at 26.

**11.** UCC § 2–206(b) provides that "an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment ..." The official comment states that "[e]ither ship-

ment or a prompt promise to ship is made a proper means of acceptance of an offer looking to current shipment." UCC § 2–206, Official Comment 2.

**12.** Courts are split on the standard for a conditional acceptance under § 2–207. *See Daitom,* 741 F.2d at 1576 (finding that Pennsylvania would most likely adopt "better" view that offeree must explicitly communicate unwillingness to proceed with transaction unless additional terms in response are accepted by offeror). On one extreme of the spectrum, courts hold that the offeree's response stating a materially different term solely to the disadvantage of the offeror constitutes a conditional acceptance. *See Daitom,* 741 F.2d at 1569 (citing *Roto–Lith, Ltd. v. F.P. Bartlett & Co.,* 297 F.2d 497 (1st Cir.1962)). At the other end of the spectrum, courts hold that the conditional nature of the acceptance should be so clearly expressed in a manner sufficient to notify the offeror that the offeree is unwilling to proceed without the additional or dif-

Gateway provides no evidence that at the time of the sales transaction, it informed plaintiff that the transaction was conditioned on plaintiff's acceptance of the Standard Terms. Moreover, the mere fact that Gateway shipped the goods with the terms attached did not communicate to plaintiff any unwillingness to proceed without plaintiff's agreement to the Standard Terms. *See, e.g., Arizona Retail,* 831 F.Supp. at 765 (conditional acceptance analysis rarely appropriate where contract formed by performance but goods arrive with conditions attached); *Leighton Indus., Inc. v. Callier Steel Pipe & Tube, Inc.,* 1991 WL 18413, *6, Case No. 89–C–8235 (N.D.Ill. Feb. 6, 1991) (applying Missouri law) (preprinted forms insufficient to notify offeror of conditional nature of acceptance, particularly where form arrives after delivery of goods).

■■■ Because plaintiff is not a merchant, additional or different terms contained in the Standard Terms did not become part of the parties' agreement unless plaintiff expressly agreed to them. *See* K.S.A. § 84–2–207, Kansas Comment 2 (if either party is not a merchant, additional terms are proposals for addition to the contract that do not become part of the contract unless the original offeror expressly agrees).[13] Gateway argues that

plaintiff demonstrated acceptance of the arbitration provision by keeping the computer more than five days after the date of delivery. Although the Standard Terms purport to work that result, Gateway has not presented evidence that plaintiff expressly agreed to those Standard Terms. Gateway states only that it enclosed the Standard Terms inside the computer box for plaintiff to read afterwards. It provides no evidence that it informed plaintiff of the five-day review-and-return period as a condition of the sales transaction, or that the parties contemplated additional terms to the agreement.[14] *See Step–Saver,* 939 F.2d at 99 (during negotiations leading to purchase, vendor never mentioned box-top license or obtained buyer's express assent thereto). The Court finds that the act of keeping the computer past five days was not sufficient to demonstrate that plaintiff expressly agreed to the Standard Terms. *Accord Brown Machine,* 770 S.W.2d at 421 (express assent cannot be presumed by silence or mere failure to object). Thus, because Gateway has not provided evidence sufficient to support a finding under Kansas or Missouri law that plaintiff agreed to the arbitration provision contained in Gateway's Standard Terms, the Court overrules Gateway's motion to dismiss.

ferent terms. *See Daitom,* 741 F.2d at 1569 (citing *Dorton v. Collins & Aikman Corp.,* 453 F.2d 1161 (6th Cir.1972)). The middle approach requires that the response predicate acceptance on clarification, addition or modification. *See Daitom,* 741 F.2d at 1569 (citing *Construction Aggregates Corp. v. Hewitt–Robins, Inc.,* 404 F.2d 505 (7th Cir.1968)). The First Circuit has since overruled its decision in *Roto–Lith, see Ionics, Inc. v. Elmwood Sensors, Inc.,* 110 F.3d 184, and the Court finds that neither Kansas nor Missouri would apply the standard set forth therein. *See Boese–Hilburn Co. v. Dean Machinery Co.,* 616 S.W.2d 520, (Mo.App.1981) (rejecting *Roto–Lith* standard); *Owens–Corning Fiberglas Corp. v. Sonic Dev. Corp.,* 546 F.Supp. 533, 538 (D.Kan.1982) (acceptance is not counteroffer under Kansas law unless it is made conditional on assent to additional or different terms (citing *Roto–Lith* as comparison)); *Daitom,* 741 F.2d at 1569 (finding that *Dorton* is "better" view). Because Gateway does not

satisfy the standard for conditional acceptance under either of the remaining standards (*Dorton* or *Construction Aggregates*), the Court does not decide which of the remaining two standards would apply in Kansas and/or Missouri.

13. The Court's decision would be the same if it considered the Standard Terms as a proposed modification under UCC § 2–209. *See, e.g., Orris,* 5 F.Supp.2d at 1206 (express assent analysis is same under §§ 2–207 and 2–209).

14. The Court is mindful of the practical considerations which are involved in commercial transactions, but it is not unreasonable for a vendor to clearly communicate to a buyer—at the time of sale—either the complete terms of the sale or the fact that the vendor will propose additional terms as a condition of sale, if that be the case.

The motion also must be overruled because Kansas and Missouri law may not apply. As noted above, the Court must interpret the contract according to the law of the state in which the parties performed the last act necessary to form the contract. Gateway's motion does not address the choice of law issue, and the record is woefully unclear where the parties performed the last act necessary to complete the contract. Gateway therefore has not established that its motion is meritorious. If Gateway contends that the issue of contract formation is governed by some law other than that of Kansas or Missouri, it shall file a supplemental motion which cites the factual and legal basis for its position. The Court will review that submission and decide whether to order a jury trial on the existence of an agreement to arbitrate. *See Avedon,* 126 F.3d at 1283.

### B. Hewlett–Packard's Motion to Dismiss

Plaintiff brings individual and class action claims against Hewlett–Packard, claiming that it breached a duty to warn consumers that its products are incompatible with Gateway computers. *Complaint,* ¶ 7. Hewlett–Packard asserts that the Court lacks diversity jurisdiction under 28 U.S.C. § 1332(a) because plaintiff does not seek damages in excess of $75,000.

Federal courts are courts of limited jurisdiction and may exercise jurisdiction only when specifically authorized to do so. *See Castaneda v. I.N.S.,* 23 F.3d 1576, 1580 (10th Cir.1994). A court lacking jurisdiction must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking. *Scheideman v. Shawnee County Bd. of County Comm'rs,* 895 F.Supp. 279, 280 (D.Kan.1995) (citing *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974)); Fed.R.Civ.P. 12(h)(3). The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper. *Basso,* 495 F.2d at 909 (10th Cir.1974). When federal jurisdiction is challenged, plaintiff bears the burden of showing why the case should not be dismissed.[15] *Jensen v. Johnson County Youth Baseball League,* 838 F.Supp. 1437, 1439–40 (D.Kan.1993).

Challenges to jurisdiction under Fed.R.Civ.P. 12(b)(1) generally take two forms: facial attacks on the sufficiency of jurisdictional allegations or factual attacks on the accuracy of those allegations. *Holt v. U.S.,* 46 F.3d 1000, 1002–3 (10th Cir. 1995). Defendant's motion falls within the former category, and neither party relies on evidence outside the complaint. "[W]here the motion to dismiss states that it affirmatively appears from the allegations of the complaint that the requisite jurisdictional amount is not involved, the question of jurisdiction may be determined on the allegations of the complaint, without the production of any evidence." *Gibson v. Jeffers,* 478 F.2d 216, 220–21 (10th Cir. 1973).

Ordinarily, the amount plaintiff claims in the pleadings controls if he apparently makes the claim in good faith. *F & S Const. Co. v. Jensen,* 337 F.2d 160, 162 (10th Cir.1964).

> But if, from the face of the pleadings, it is apparent, to a legal certainty, that plaintiff cannot recover the amount claimed, or if from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

*Jensen,* 337 F.2d at 162 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938)).

---

**15.** While the Court holds pro se pleadings to less stringent standards than pleadings drafted by lawyers, pro se litigants must follow the same procedural rules as any other litigant. *See Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Green v. Dorrell,* 969 F.2d 915, 917 (10th Cir.1992). The Court may not assume the role of advocate for a pro se litigant. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991).

■ Plaintiff's only response regarding the amount of damages is: "A careful reading of the complaint shows damages in excess of *$24,000.00.*" *Plaintiff's Response to Hewlett–Packard's Support of Gateway's Motion to Dismiss or Stay,* ¶ 1 (Doc. # 23) filed January 25, 2000 (emphasis added).[16] The Court agrees with plaintiff's statement. In the opening paragraph of the complaint, plaintiff alleges generally that defendants have caused him personal damages in excess of $350,000 and caused class damages exceeding $350,000. At the end of the complaint, plaintiff itemizes the damages as follows: $350,000 in actual damages (including lost time of over $300,-000, *see Complaint,* ¶ 3) and $3,500,000 in punitive damages against Gateway; $24,000 plus unitemized punitive damages against Gateway; and $24,000 plus unitemized punitive damages against Hewlett Packard. *Complaint,* pp. 6–7.[17]

■ Merely alleging damages in excess of $24,000 is not sufficient to meet plaintiff's burden of establishing that jurisdiction is proper. While plaintiff is not necessarily required to specify an exact amount of punitive damages, *see, e.g., Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.,* 320 U.S. 238, 241, 64 S.Ct. 5, 88 L.Ed. 15 (1943) (issue is whether it appears to a legal certainty that plaintiff could not recover sufficient actual and punitive damages to meet jurisdictional requirement), plaintiff must allege enough facts to convince the Court that recovera-ble damages will bear a reasonable relation to the minimum jurisdictional requirement. *See Gibson,* 478 F.2d at 221. In the complaint, plaintiff alleges only that Hewlett–Packard sold him a scanner without warning him that it was not compatible with Gateway computers, and that Hewlett–Packard had a duty to warn of any incompatibility problems. *See Complaint,* ¶ 7. He alleges no facts to support actual damages of $24,000, nor does he allege facts to show that he is entitled to punitive damages or the amount thereof. Plaintiff argues that the Court has jurisdiction over joinder claims against Hewlett–Packard under Rules 18, 19 and 20 of the Federal Rules of Civil Procedure. Rule 18 deals with joinder of claims and remedies against a single party, however, and joinder under Rules 19 and 20 requires independent subject matter jurisdiction over the claims against the joined defendant. *See* 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d §§ 1610, 1659. Thus, regardless of the joinder rules, plaintiff must claim damages exceeding $75,000 against Hewlett–Packard in order to satisfy the diversity jurisdictional requirement. Plaintiff fails to do so. Thus, the Court finds that Hewlett–Packard's motion to dismiss should be sustained.[18]

## C. Plaintiff's Motions

■ Plaintiff has filed four motions which are currently pending before the Court. First, he asks the Court to certify a class.[19] A prerequisite for class action

**16.** Plaintiff does not address the amount of damages claimed in *Plaintiff's Response to Defendant Hewlett–Packard's Motion to Dismiss or Stay* (Doc. # 20) filed January 5, 2000 or *Plaintiff's Adendum [sic] to his Memoranda in Support* (Doc. # 21) filed January 6, 2000.

**17.** Plaintiff further claims that the "class of consumers who've purchased Gateway Computers and Hewlett–Packard scanners are owed damages plus punitives [sic] as can be shown." *Complaint,* p. 7. Plaintiff may not aggregate the claims of the class members, however, to meet the amount in controversy requirement. *See Zahn v. International Paper Co.,* 414 U.S. 291, 294–95, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Leonhardt v. Western Sugar Co.,* 160 F.3d 631, 637–38 (10th Cir.

1998) (each plaintiff in class action diversity action must meet jurisdictional amount in controversy; aggregation allowed only if plaintiffs unite to enforce a single title or right in which they have a common and undivided interest).

**18.** Because the Court concludes that it lacks subject matter jurisdiction, it does not reach Hewlett–Packard's claim that plaintiff has failed to state a claim upon which relief may be granted.

**19.** Neither defendant has filed a response to the motion to certify. On January 4, 2000, the Court entered an order staying Hewlett–Packard's time to file a response to 30 days after defendant receives a transcript of plaintiff's deposition. The record does not reveal

certification is a finding by the Court that the representative party can "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Due process requires that the Court "stringently" apply the competent representation requirement because class members are bound by the judgment (unless they opt out), even though they may not actually be aware of the proceedings. *Albertson's, Inc. v. Amalgamated Sugar Co.,* 503 F.2d 459, 463–64 (10th Cir.1974). Because a layperson ordinarily does not possess the legal training and expertise necessary to protect the interests of a proposed class, courts are reluctant to certify a class represented by a pro se litigant. *See* 7A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 1769.1 n. 12; *see also Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir. 1975) (pro se prisoners are not adequate representatives for a class). Moreover, although plaintiff has the right to appear pro se on his own behalf, he may not represent another pro se plaintiff in federal court. 28 U.S.C. § 1654; *see, e.g., U.S. v. Grismore,* 546 F.2d 844 (10th Cir.1976); *Herrera–Venegas v. Sanchez–Rivera,* 681 F.2d 41, 42 (1st Cir.1982); *U.S. v. Taylor,* 569 F.2d 448 (7th Cir.1978). Accordingly, the Court concludes that plaintiff is not an adequate class representative and overrules his motion to certify a class.

■ Second, plaintiff requests a "writ of certiorari" to the District Court of Johnson County, Kansas, for a transcript and certified copy of all documents in a prior case. Courts generally have their own procedures for obtaining transcripts and certified copies of documents in a prior case. Plaintiff provides no information to lead the Court to conclude otherwise, nor does he cite any legal authority to support that this Court has the power to grant his unusual request.[20] Accordingly, the Court

overrules plaintiff's motion for a "writ of certiorari."

Finally, plaintiff seeks sanctions against Gateway counsel because of alleged deficiencies in their citation to legal authorities, and he urges the Court to require certain defense counsel to verify that they have notified courts that he has lodged an ethical complaint against them. The Court finds no merit to either request and therefore overrules both motions.

**IT IS THEREFORE ORDERED** that the *Motion to Dismiss* (Doc. # 6) which defendant Gateway filed November 22, 1999 be and hereby is **OVERRULED.** If Gateway contends that the issue of contract formation is governed by some law other than that of Kansas or Missouri, on or before **June 30, 2000,** it shall file a supplemental motion to dismiss and compel arbitration and cite the factual and legal basis for its position. Plaintiff no later than **July 24, 2000** shall file any response. Gateway's reply, if any, shall be filed no later than **August 7, 2000.** The Court will review those submissions and decide whether to order a jury trial on the existence of an agreement to arbitrate. In presenting these materials, however, the parties are ordered to brief the matter in a summary judgment motion format and scrupulously follow Rule 56, Fed.R.Civ.P., and D. Kan. Rule 56.1.

**IT IS FURTHER ORDERED** that *Defendant Hewlett–Packard, Inc.'s Motion To Dismiss, Or In The Alternative For Stay Of Proceedings* (Doc. # 16) filed December 22, 1999 be and hereby is **SUSTAINED** in part, in that plaintiff's complaint against Hewlett–Packard is dismissed for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that the *Motion* (Doc. # 2) to certify a class which plaintiff filed October 29, 1999 be and

---

the status of plaintiff's deposition or the transcript thereof.

**20.** A "certiorari" is "[a]n extraordinary writ issued by an appellate court, at its discretion,

directing a lower court to deliver the record in the case for review." Black's Law Dictionary (1996). This Court does not have appellate jurisdiction over the District Court of Johnson County, Kansas.

hereby is **OVERRULED;** the *Motion For Sanctions, Expenses and Punitives [sic]* (Doc. # 11) which plaintiff filed December 3, 1999 be and hereby is **OVERRULED;** the *Motion for a Writ of Certiorari* (Doc. # 12) which plaintiff filed December 6, 1999 be and hereby is **OVERRULED,** and the *Motion for Verification* (Doc. # 24) which plaintiff filed January 25, 2000 be and hereby is **OVERRULED.**