No. 95,102

WACHTER MANAGEMENT COMPANY, *Appellee*, v. DEXTER & CHANEY, INC., *Appellant*.

144 P.3d 747

Opinion filed October 27, 2006.

*Leonard L. Wagner*, of Husch & Eppenberger, LLC, of Kansas City, Missouri, argued the cause, and *Michael S. Hargens*, of the same firm, was on the briefs for the appellant.

*Leslie A. Bailey*, of Moore & Hennessy, P.C., of Kansas City, Missouri, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

ROSEN, J.: Wachter Management Company (Wachter) filed an action for breach of contract, breach of warranty, and fraudulent inducement against Dexter & Chaney, Inc. (DCI). DCI filed a motion to dismiss the action based on improper venue. The district court denied DCI's motion, holding that a choice of venue provision contained in a "shrinkwrap" software licensing agreement was not enforceable. DCI brings this interlocutory appeal pursuant to K.S.A. 60-2102(b).

## FACTS

Wachter is a construction management company incorporated in Missouri with its principal place of business in Lenexa, Kansas. DCI is a software services company that develops, markets, and supports construction software, project management software, service management software, and document imaging software for construction companies like Wachter. DCI is incorporated in Washington with its principal place of business in Seattle.

Beginning in April 2002, DCI approached Wachter for the purpose of marketing its software to Wachter. Wachter expressed some interest in DCI's software but delayed negotiations to purchase the software until August 2003. After detailed negotiations, DCI issued a written proposal to Wachter on October 15, 2003, for the purchase of an accounting and project management software system. The proposal included installation of the software, a full year of maintenance, and a training and consulting package. The proposal did not contain an integration clause or any provision indicating that it was the final and complete agreement of the parties, nor did the proposal contain any provision indicating that additional terms might be required. An agent for Wachter signed DCI's proposal at Wachter's Lenexa office on October 17, 2003.

Thereafter, DCI shipped the software and assisted Wachter in installing it on Wachter's computer system. Enclosed with the software, DCI included a software licensing agreement, also known as a "shrinkwrap" agreement, which provided:

"This is a legal agreement between you (the 'CUSTOMER') and Dexter & Chaney, Inc. ('DCI'). By opening this sealed disk package, you agree to be bound by this agreement with respect to the enclosed software as well as any updates and/or applicable custom programming related thereto which you may have purchased or to which you may be entitled. If you do not accept the terms of this agreement, promptly return the unopened disk package and all accompanying documentation to DCI.

. . . .

"CUSTOMER ACKNOWLEDGES HAVING READ THIS AGREEMENT, UNDERSTANDS IT, AND AGREES TO BE BOUND BY ITS TERMS AND CONDITIONS. CUSTOMER ALSO AGREES THAT THIS AGREEMENT AND THE DCI INVOICE ENUMERATING THE NUMBER OF CONCURRENT LICENSED USERS TOGETHER COMPRISE THE COMPLETE AND EXCLUSIVE AGREEMENT BETWEEN THE PARTIES AND SUPERSEDE ALL PROPOSALS OR PRIOR AGREEMENTS, VERBAL OR WRITTEN, AND ANY OTHER COMMUNICATIONS BETWEEN THE PARTIES RELATING TO THE SUBJECT MATTER OF THIS AGREEMENT."

The software license agreement also contained a choice of law/venue provision providing that the agreement would be governed by the laws of the State of Washington and that any disputes would be resolved by the state courts in King County, Washington.

In February 2005, after encountering problems with the software, Wachter sued DCI in Johnson County, Kansas, for breach of contract, breach of warranty, and fraudulent inducement, seeking damages in excess of $350,000. DCI moved to dismiss Wachter's petition, alleging improper venue based on the provision of the software licensing agreement which provided that King County, Washington, was the proper venue. In response, Wachter argued that the software licensing agreement was an unenforceable addition to the parties' original contract.

The district court denied DCI's motion, finding that the parties entered into a contract when Wachter signed DCI's proposal and concluding that the software license agreement contained additional terms that Wachter had not bargained for or accepted. The district court certified its ruling for an interlocutory appeal, and the Court of Appeals granted DCI's request for interlocutory appeal. We transferred the matter to this court on our own motion pursuant to K.S.A. 20-3018(c).

## ANALYSIS

We review the district court's decision on a motion to dismiss using a de novo standard of review. *Kluin v. American Suzuki Motor Corp.*, 274 Kan. 888, 893, 56 P.3d 829 (2002). Because DCI's motion to dismiss was decided before trial on the basis of the pleadings, the petition, affidavits, and other written materials, we must consider as true the allegations in Wachter's petition and the factual assertions in Wachter's affidavits to the extent they are uncontroverted by DCI's affidavits. If the parties present conflicting affidavits, we will resolve all factual disputes in Wachter's favor. See *Kluin*, 274 Kan. at 893.

DCI argues that the district court erred when it refused to recognize the applicability of "shrinkwrap" license agreements. DCI raises four arguments. First, DCI contends that Wachter accepted the terms of the license agreement by opening and using the software. Second, DCI argues that other courts have upheld the terms of shrinkwrap agreements. Third, DCI claims that the district court's refusal to apply the licensing agreement provides Wachter with an undeserved windfall because its use of the software was unfettered by any license terms. Fourth, DCI asserts that the venue clause in its license agreement is applicable to noncontract claims that are related to or limited by the contract.

Wachter counters by arguing that DCI's license agreement is a unilateral alteration of the contract created when Wachter accepted DCI's proposal. Disputing DCI's contention that it assented to the additional terms by opening, installing, and using the software, Wachter claims that it received no independent consideration for the amendments to the contract. Wachter further argues that the Uniform Commercial Code (UCC), K.S.A. 84-1-101 *et seq.*, precludes unilateral alterations to contract terms.

We must begin our analysis with a determination of whether the UCC applies. K.S.A. 84-1-103 (displacing conflicting common law); *Moritz Implement Co, Inc. v. Matthews*, 265 Kan. 179, 959 P.2d 886 (1998) (reversing the application of conflicting common law because the UCC applied). The UCC applies to transactions involving goods. K.S.A. 84-2-102. Goods are defined as "all things

(including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) and things in action." K.S.A. 84-2-105.

Computer software is considered to be goods subject to the UCC even though incidental services are provided along with the sale of the software. *Systems Design v. Kansas City P.O. Employees Credit Union*, 14 Kan. App. 2d 266, 272, 788 P.2d 878 (1990). The *Systems Design* court noted that modifications and corrections to the computer programs for improving the system operation were incidental to the sale of the software because, without the purchase of the software, the services would have been unnecessary. 14 Kan. App. 2d at 272. But see *Mortgage Plus, Inc. v. DocMagic, Inc.*, 2004 WL 2331918 (D. Kan. 2004) (unpublished opinion) (noting that the software was incidental to and worthless without the defendant's services, the court concluded that the UCC did not apply because the defendant's document preparation services were the predominant purpose of the contract).

The *Systems Design* analysis applies to the facts in this case. Although DCI's proposal included maintenance, training, and consulting services, these services would not have been necessary if Wachter had not purchased DCI's software. Because the services were incidental to Wachter's purchase of computer software, we conclude that the software at issue in this case qualifies under the definition of goods, and the UCC applies.

Pursuant to K.S.A. 84-2-204, a contract for the sale of goods is formed "in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Unless otherwise unambiguously indicated by the language or circumstances, an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances. K.S.A. 84-2-206(1)(a). The Kansas Comment to 84-2-206 provides that the offeror is the master of the offer and may require a specific manner of acceptance if it is unambiguously conveyed in the language of the offer or other circumstances. K.S.A. 84-2-206, Kansas Comment 2, 1996.

In this case, DCI issued a written proposal to Wachter containing an itemized list of the software to be purchased, the quantity to be purchased, the price of the software, the time period for execution, and the cost for the incidental maintenance, training, and consulting services. DCI's proposal requested Wachter to accept its offer to sell Wachter software by signing the proposal above the words "[p]lease ship the software listed above." Accordingly, Wachter accepted DCI's offer to sell the software to it by signing the proposal at Wachter's office in Lenexa. Thus, a contract was formed when Wachter accepted DCI's offer to sell it the software, indicating agreement between the parties. See K.S.A. 84-2-204.

K.S.A. 84-2-201 requires contracts for the sale of goods over $500 to be in writing and signed by the parties. The signed proposal constitutes a written contract in this case. The cover letter with DCI's proposal stated that it included "modules and licenses." However, DCI did not attach a copy of its Software Licensing Agreement to the proposal or incorporate it by reference in the proposal to indicate that there would be additional contract language regarding the licenses. Consequently, the parties' contract did not contain the terms of the Software Licensing Agreement. Wachter was advised of the terms of the Software Licensing Agreement after DCI shipped the software in partial performance of its duties under the contract. Because the Software Licensing Agreement was attached to the software rather than the original contract, it must be considered as an attempt to amend the contract.

The UCC addresses the modification of a contract. K.S.A. 84-2-207 provides in pertinent part:

"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

"(2) The additional terms are to be construed as proposals for addition to the contract. . . .

"(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract

consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this act."

K.S.A. 84-2-209 provides:

"(1) An agreement modifying a contract within this article needs no consideration to be binding.

"(2) A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.

"(3) The requirements of the statute of frauds section of this article (section 84-2-201) must be satisfied if the contract as modified is within its provisions.

"(4) Although an attempt at modification or rescission does not satisfy the requirements of subsection (2) or (3) it can operate as a waiver.

"(5) A party who has made a waiver affecting an executory portion of the contract may retract the waiver by reasonable notification received by the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position in reliance on the waiver."

Proposed amendments that materially alter the original agreement are not considered part of the contract unless both parties agree to the amendments. *Southwest Engineering Co, Inc. v. Martin Tractor Co., Inc.*, 205 Kan. 684, 694, 473 P.2d 18 (1970). UCC 2-209 requires express assent to the proposed modifications. *Step-Saver Data Systems, Inc. v. Wyse Technology*, 939 F.2d 91, 98 (3d Cir. 1991) (refusing to uphold a shrinkwrap license agreement as an amendment to the parties' contract); *Arizona Retail Systems v. Software Link*, 831 F. Supp. 759, 764 (D. Ariz. 1993) (concluding that a software company could not unilaterally change the terms of a preexisting contract by including a shrinkwrap license agreement with the software when it shipped); *Klocek v. Gateway, Inc.*, 104 F. Supp. 2d 1332, 1341-42 (D. Kan. 2000) (denying the application of an arbitration clause contained in a form with standard terms packaged inside a computer box); *United States Surgical Corp. v. Orris, Inc.*, 5 F. Supp. 2d 1201, 1206 (D. Kan. 1998) (rejecting "single use only" language on the packaging because there was no evidence that the parties agreed on this limitation in the contract).

DCI argues that Wachter expressly consented to the shrinkwrap agreement when it installed and used the software rather than re-

turning it. However, continuing with the contract after receiving a writing with additional or different terms is not sufficient to establish express consent to the additional or different terms. *Step-Saver*, 939 F.2d at 98; *Arizona Retail Systems*, 831 F. Supp. at 764; *Klocek*, 104 F. Supp. 2d at 1341; *Orris*, 5 F. Supp. 2d at 1206.

In *Step-Saver*, the plaintiff ordered software from the defendant by telephone and followed up with a written purchase order. The defendant shipped the software along with an invoice. A license with additional terms was printed on the box containing the software. The additional terms stated that opening the box indicated an acceptance of the additional terms. Without determining exactly when the contract was formed, the *Step-Saver* court concluded that the parties' performance in ordering, shipping, and paying for the software demonstrated the existence of a contract and limited its analysis to the terms of the purchase order.

The *Step-Saver* court noted that UCC 2-209 allows the parties to amend an agreement without additional consideration and then applied the principles of UCC 2-207 to conclude that the parties must expressly intend to modify a previous agreement. 939 F.2d at 98. The applicable sections of UCC 2-207 provide: ·

"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

"(2) The additional terms are to be construed as proposals for addition to the contract." K.S.A. 84-2-207.

The *Step-Saver* court stated that UCC 2-207 provides a default rule in the absence of a party's express assent to proposed changes in an agreement. According to the default rule, the terms of the agreement include the terms both parties have agreed upon and any terms implied by the provisions of the UCC. 393 F.2d at 99. Treating the shrinkwrap license as a "written confirmation containing additional terms," the *Step-Saver* court concluded that continuing with the contract after receiving the shrinkwrap license was not sufficient to establish an express assent to the new or additional terms contained in the shrinkwrap license. 939 F.2d at 98, 105-06.

Because the plaintiff never expressly agreed to the additional terms contained in the shrinkwrap license, the terms did not become part of the parties' agreement. 939 F.2d at 106. The court also found that the integration clause in the license agreement and the "consent by opening" language did not render the software provider's acceptance conditional because it gave no real indication that it was willing to forgo the transaction if Step-Saver rejected the additional terms. 939 F.2d at 102.

*Arizona Retail Systems Inc.,* involved facts similar to those in *Step-Saver.* Arizona Retail Systems (ARS) ordered software by telephone, and the software company shipped the software along with an invoice. The software company included a shrinkwrap license on the software packaging. Concluding that a contract was formed when the software company agreed to ship the software, the Arizona district court analyzed the shrinkwrap license as a proposed modification of the parties' contract under section 2-209 of the UCC. 831 F. Supp. at 764-65. The software company argued that ARS accepted the modifications in the shrinkwrap license agreement by opening the shrinkwrap package. Relying on *Step-Saver,* the *Arizona Retail Systems* court rejected that argument, concluding that the plaintiff had not assented to the proposed modifications by merely continuing with the contract. Because there was no express assent to the terms of the shrinkwrap license, the *Arizona Retail Systems* court held that the shrinkwrap license was unenforceable. 831 F. Supp. at 764-66.

The *Klocek* case addressed the validity of an arbitration clause contained in a shrinkwrap-type agreement. In *Klocek,* a consumer purchased a Gateway computer. Gateway included its Standard Terms and Conditions Agreement (Agreement) inside the box with the computer. When the consumer sued for breach of contract and breach of warranty, Gateway filed a motion to dismiss, claiming that the consumer was bound by the arbitration clause in its Agreement. Assuming that the consumer offered to purchase the computer and Gateway accepted the offer by agreeing to ship or shipping the computer, the *Klocek* court treated Gateway's Agreement as an expression of acceptance or written confirmation of the consumer's offer to purchase and applied K.S.A. 84-2-207. 104 F.

Supp. 2d at 1340. According to Gateway's Agreement, retaining the computer for more than 5 days constituted an acceptance of its Agreement. Gateway argued that the consumer assented to the arbitration clause by retaining the computer for more than 5 days. Citing *Step-Saver* and *Arizona Retail Systems*, the *Klocek* court rejected Gateway's argument, finding that the consumer was unaware that the transaction depended on his acceptance of the Agreement and concluding that the consumer had not expressly agreed to Gateway's terms. 104 F. Supp. 2d at 1341. The *Klocek* court further noted that its decision would be the same if it had considered the Agreement a modification of the contract pursuant to UCC 2-209 because the express assent analysis is the same under UCC 2-207 and UCC 2-209. 104 F. Supp. 2d at 1341 n.2.

Although *Orris* did not involve computer equipment or software, it did involve a shrinkwrap-type agreement. Orris cleaned, resterilized, and resharpened medical instruments made by United States Surgical Corp. (U.S. Surgical) so that they could be reused. U.S. Surgical filed an action against Orris for violating its patent and trademark rights. The packaging for U.S. Surgical's instruments stated that each instrument was for a "single use only." Based on this language, U.S. Surgical argued that the "single use only" labels created a contractually enforceable restriction, limiting usage of the instruments to a single procedure.

The *Orris* court treated the "single use only" language as a proposed modification to the sales contract for the instruments and applied UCC 2-209. Relying on *Step-Saver* and *Arizona Retail Systems*, the *Orris* court concluded that the modification of the sales contract required express assent by the buyer. The *Orris* court held that the "single use only" term was not binding, stating that "[a] hospital's mere compliance with the previously entered agreement did not constitute assent or indicate any intent to adopt the 'single use only' language as a modification to the agreement." 5 F. Supp. 2d at 1206.

DCI does not address the application of the UCC or the analysis of *Step-Saver*, *Arizona Retail Systems*, *Klocek*, or *Orris*. Instead, DCI relies on *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997); *ProCD v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996); and

*Mortenson Co. v. Timberline Software*, 140 Wash. 2d 568, 998 P.2d 305 (2000), for the proposition that shrinkwrap agreements are valid, and the terms contained within them are enforceable, because the purchaser accepts the terms when it uses the product.

In *ProCD*, a consumer purchased a software database program at a retail store. A license enclosed in the package with the software limited its use to noncommercial applications. The software also required a user to accept the license agreement by clicking an on-screen button before activating the software. Contrary to the license, the consumer made the database available on the internet at a reduced price. ProCD sued, seeking an injunction against further dissemination of its database.

The *ProCD* court determined that the *vendor* is the master of the offer under the UCC and may invite acceptance by conduct or limit the kind of conduct that constitutes acceptance. 86 F.3d at 1452. The court found that ProCD proposed a contract that invited acceptance by using the software after having an opportunity to review the license. If the buyer disagreed with the terms of the contract, he or she could return the software. Holding that the consumer was bound by the terms of the license agreement, the *ProCD* court stated that "[n]otice on the outside, terms on the inside, and a right to return the software for a refund if the terms are unacceptable (a right the license expressly extends), may be a means of doing business valuable to buyers and sellers alike." 86 F.3d at 1451.

In *Hill*, a consumer ordered a Gateway computer over the telephone. When the computer arrived, the box contained Gateway's standard terms governing the sale. According to Gateway's standard terms, the consumer accepted the terms by retaining the computer for 30 days. When the consumer was not satisfied with the operation of the computer, he sued Gateway on behalf of a class of similarly situated consumers. Relying on the *ProCD* court's analysis that the *vendor* is the master of the offer, the *Hill* court enforced the arbitration clause found in Gateway's standard terms even though the consumer was not aware of the terms until he received the computer. 105 F.3d at 1150. The *Hill* court noted that there are many commercial transactions in which money is ex-

changed for products with disclosure of certain terms of the sale following the execution of the sale. 105 F.3d at 1148 (citing *ProCD*, 86 F.3d 1447 [7th Cir. 1996], and *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585,113 L. Ed. 2d 622, 111 S. Ct. 1522 [1991]). The *Hill* court announced its policy that "[p]ractical considerations support allowing vendors to enclose the full legal terms with their products. . . . Customers as a group are better off when vendors skip costly and ineffectual steps such as telephonic recitation [of standard terms], and use a simple approve-or-return device." 105 F.3d at 1149.

Both *ProCD* and *Hill* can be distinguished from this case. The buyers in *ProCD* and *Hill* were both consumers who did not enter into negotiations with the vendors prior to their purchases. Wachter, on the other hand, participated in detailed negotiations with DCI before accepting DCI's proposal to sell Wachter the software. The *ProCD* and *Hill* courts concluded that the offer to sell software to the consumers was not accepted until the consumers opened the packaging with the terms of the sale enclosed and retained the product after having an opportunity to read the terms of the sale. Accordingly, the contract was not formed until the last act indicating acceptance occurred. Here, however, the last act indicating acceptance of DCI's offer to sell software to Wachter occurred when Wachter signed DCI's proposal. Thus, the contract was formed before DCI shipped the software and Wachter had an opportunity to consider the licensing agreement.

Although *ProCD* and *Hill* are distinguishable, the third case cited by DCI is factually similar to this case. In *Mortenson*, a construction contractor purchased software to assist with its bid preparation. The contractor issued a purchase order and the developer shipped the software accompanied by a shrinkwrap license, which included a limitation of remedies clause. Applying UCC 2-204, the *Mortenson* court held that the initial purchase order and the shrinkwrap license were part of a "layered contract" where the initial purchase order was not an integrated contract because it did not contain an integration clause and required additional terms to be determined later. 140 Wash. 2d at 580. The *Mortenson* court adopted the contract formation analysis from *ProCD* and *Hill* and

concluded that Mortenson's use of the software constituted its assent to the terms of the shrinkwrap license. 140 Wash. 2d at 584.

Two of the Washington Supreme Court justices dissented from the *Mortenson* opinion, stating that "the majority abandons traditional contract principles governing offer and acceptance and relies on distinguishable cases with blind deference to software manufacturers' preferred method of conducting business." 140 Wash. 2d at 589, 599. The dissent distinguished its analysis by noting that under traditional contract law principles the *offeror*, not just the *vendor*, is the master of the offer. 140 Wash. 2d at 590. Observing that the construction contractor made an offer to purchase when it sent a purchase order to the software developer, the dissenting justices concluded that the parties formed a contract when the software developer accepted the terms of the purchase order by signing it. Because the contract was formed before the software developer delivered the product with the shrinkwrap license agreement, the dissenting justices treated the shrinkwrap agreement as a proposal to modify the terms of the contract pursuant to UCC 2-209. 140 Wash. 2d at 597. The dissent relied on *Step-Saver* and *Arizona Retail Systems* for its conclusion that the parties must expressly consent to any modifications. Without evidence that the construction contractor expressly consented, the dissenting justices stated that they would have remanded the matter to determine whether the parties' conduct constituted assent. 140 Wash. 2d at 598.

Although the facts in *Mortenson* are similar to the facts in this case, we disagree with the *Mortenson* court's analysis of when the contract was formed. We adhere to the traditional contract principles outlined by the dissenting justices in *Mortenson* and the decisions in *Step-Saver, Arizona Retail Systems, Klocek*, and *Orris*. The offeror, whether the seller or the buyer, is the master of the offer. See 84-2-206, Kansas Comment 2, 1996.

In this case, DCI and Wachter negotiated prior to entering into a contract for the sale of software. DCI's written proposal following the parties' negotiations constituted an offer to sell. Wachter accepted that offer when it signed the proposal, requesting shipment of the software. The contract was formed when Wachter accepted

DCI's proposal. See K.S.A. 84-2-204. Because the contract was formed before DCI shipped the software with the enclosed license agreement, the Software Licensing Agreement must be treated as a proposal to modify the terms of the contract. See K.S.A. 84-2-209. There is no evidence that Wachter expressly agreed to the modified terms, and Wachter's actions in continuing the preexisting contract do not constitute express assent to the terms in the Software Licensing Agreement. Thus, the forum selection clause in the Software Licensing Agreement is not enforceable against Wachter. We affirm the district court's denial of DCI's motion to dismiss and remand the matter for further proceedings.

LUCKERT, J., dissenting: I would reverse the district court's conclusion that the choice of venue provision in the software licensing agreement was not enforceable. I disagree with the majority's analysis that the license agreement was a modification of the contract. Rather, the original offer included the license or, at least, expressed the intent of the parties that a license was a part of the offer. Wachter assented to and accepted these terms by its conduct.

DCI's letter transmitting the proposal notified Wachter that "[t]he proposal includes modules and licenses." Wachter did not question, object to, or offer an alternative to the proposal. Instead Wachter signed the proposal, thus accepting the offer which included licenses. See K.S.A. 84-2-204(1) ("A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."). In turn, DCI sent the software. Wachter opened the software and installed it. In doing so, it accepted the goods. If Wachter felt that the goods were nonconforming because of the license agreement, Wachter was required by K.S.A. 84-2-204 to reject the goods. Wachter's failure to object after a reasonable time for inspection constituted an acceptance of the goods. See *ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1452-53 (7th Cir. 1996); *Salco Distributors, LLC v. iCode, Inc.,* 2006 WL 449156 (M.D. Fla. 2006) (unpublished opinion).

Alternatively, by DCI's referring to "licenses" in the proposal, there was an expression of intent either that there was to be a

layered contract or that a contract was not formed until Wachter accepted the license agreement. When sending the software, DCI gave Wachter the option of accepting the terms of the license or "promptly return[ing] the unopened disk package." DCI, as the offeror, could invite acceptance by conduct and could propose limitations on the kind of conduct that constitutes acceptance. K.S.A. 84-2-204. The notice on the shrinkwrap advised Wachter of the specifics of the license agreement and notified Wachter that by opening the software it was accepting the terms. Again, Wachter did not question or object to the terms and did not offer alternative terms. Rather, it accepted the terms of the license with notice through DCI's communication that the proposal included licenses that were a part of the contract. Wachter could have prevented formation of the contract by returning the software. Instead, Wachter opened the software. Wachter's conduct was sufficient to evidence its agreement with the terms of the contract. See K.S.A. 84-2-204(1).

The majority's reliance on *Step-Saver Data Systems, Inc. v. Wyse Technology,* 939 F.2d 91 (3d Cir. 1991), is misplaced, as the facts of that case are clearly distinguishable. *Step-Saver* involved a value-added retailer who included the software in an integrated system which was sold to an end user. The party contesting applicability of the licensing agreement had been assured the license did not apply to it at all. Additionally, the seller of the program twice asked the buyer to sign an agreement comparable to their disputed license agreement. Both times the buyer refused, but the seller continued to make the software available. *Step-Saver,* 939 F.2d at 102-03. Thus, the facts regarding acceptance varied significantly from those in this case, where the communication between Wachter and DCI made clear that the proposal included a license agreement and Wachter never attempted to reject the goods or the license or to negotiate alternative terms.

The other cases cited by the majority rely on *Step-Saver.* Furthermore, those cases are based upon the theory of modification of a contract. Under the facts of this case, where the negotiations included a clear communication that the proposal included licenses and the parties' contract did not include an integration provision,

the rationale of these cases does not apply. This case does not involve contract modification but contract formation. Furthermore, even if the issue were one of modification, Wachter's acceptance, made with notice that the license was a part of the proposal, was an assent to the modification. The communication made Wachter aware that the continuation of the contract depended upon its acceptance of the terms of the license. Thus, under K.S.A. 84-2-209 dealing with continuance of a contract after a proposed modification, Wachter accepted the modification (if the license were so considered) and became bound by the terms of the license agreement. In this regard, the communication of the proposal from DCI to Wachter, which placed Wachter on notice that a continuation of the contract required acceptance of the license, distinguishes this case from *Klocek v. Gateway, Inc.*, 104 F. Supp. 2d 1332 (D. Kan. 2000); *United States Surgical Corp. v. Orris, Inc.*, 5 F. Supp. 2d 1201 (D. Kan. 1998); and *Arizona Retail Systems v. Software Link*, 831 F. Supp. 759 (D. Ariz. 1993).

Under the facts of this case on this issue of contract formation rather than contract modification, I find persuasive the analysis of *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149-50 (7th Cir.), *cert. denied* 522 U.S. 808 (1997); *ProCD, Inc. v. Zeidenberg*, 86 F.3d at 1452-53; *Brower v. Gateway 2000*, 246 A.D.2d 246, 250-51, 676 N.Y.S.2d 569 (1998); and *Mortenson Co. v. Timberline Software*, 140 Wash. 2d 568, 583-84, 998 P.2d 305 (2000).

NUSS, J., and BEIER, J., join in the foregoing dissent.