(185 P.3d 963)
No. 97,924

INTER-AMERICAS INSURANCE CORPORATION, INC., *Appellant*, v.
IMAGING SOLUTIONS COMPANY, *Appellee*.

Opinion filed
June 13, 2008.

*Craig A. Kreiser*, of Inter-Americas Insurance Corporation, Inc., of Wichita, for appellant.

*Terry L. Malone* and *Adam T. Pankratz*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, for appellee.

Before HILL, P.J., GREEN and STANDRIDGE, JJ.

HILL, J.: This is a contract dispute where the buyer of some computer hardware and software sued the seller for damages for failing to timely perform. When the buyer sued, the seller denied any breach and counterclaimed that the buyer never gave it notice of any breach nor an opportunity to cure any breach. Because we agree with the district court that the Uniform Commercial Code (UCC) applies, we affirm its grant of summary judgment to the seller on the buyer's claim and affirm in part its summary judgment for the seller on the counterclaim. But we think the court engaged in weighing evidence, which it cannot do when deciding summary judgment, and we reverse in part and remand the question of damages for trial on the counterclaim. We therefore affirm in part, reverse in part, and remand with directions.

First we reveal our understanding of the facts; next, we establish the rules that control our actions; and then we explain our decision. Deciding whether to grant summary judgment depends a great deal upon the facts. We now bring forth what we have gleaned from the record on appeal. Typical to modern business transactions, we must look at a series of e-mails and their attachments. The history of this case reveals a good contractual relationship between two corporations abruptly, without any notice, ending.

*The negotiation history shows the words and actions of the parties.*

The parties to this agreement are the seller, Image Solutions Company, a Kansas corporation from Wichita. We will refer to it

as ISC. Its chief executive officer is Paul Black. The buyer, Inter-Americas Insurance Corporation, Inc., is also a Kansas corporation with its office in Goddard. We will refer to it as Inter-Americas.

In September 2004, two Inter-Americas employees, Sherri Fouts and Blayne Beham, attended a seminar sponsored by ISC on records management. During the seminar, ISC presented information about an imaging system made by Stellent. At the end of the seminar, Fouts and Beham said they were impressed with the Stellent imaging product. Inter-Americas wanted a more robust, paperless workflow ability, and the Stellent system appeared to fill the need.

Prior to the seminar, the two companies had cooperated on business. Before 2004, ISC sold Inter-Americas various pieces of office equipment and computer software, including a DocuWare imaging system that Inter-Americas used to store documents electronically. The DocuWare software had a notes feature which let users make and save notes about a scanned document. DocuWare software stored these notes separately from the image. Later readers could then view comments from previous users about the document. These notes were valuable to Inter-Americas.

Representatives from both companies met several times to discuss the Stellent system. Sometime in November 2004, the question arose about whether the Stellent program would have a notes feature similar to the DocuWare program. According to Inter-Americas, it relied heavily on the DocuWare notes feature and was interested in not only having this feature included with the Stellent program but also having the information already contained in the notes of its DocuWare records transferred to the new Stellent records.

Beham stated that he remembered speaking to ISC employees about converting the annotations in the DocuWare program into the Stellent system. Fouts also claims she told ISC representatives the comments from the DocuWare program would have to be transported into the new Stellent program. Black told the Inter-Americas representative that ISC would figure out how the DocuWare notes could be transferred to the Stellent program.

The parties dated their contract December 30, 2004. Their contract contained the following description:

"DocuWare to Stellent conversion process and software. $25,000

"ISC and IAI project participation to be determined. Annotated document capture facility to be developed jointly with IAI."

The relevant provisions of two "Sales & Installation Order" documents agreed to by the parties, both dated December 30, 2004, include the following:

| Item No. | Quantity | Description/Serial Number | Unit Cost | Amount |
|---|---|---|---|---|
| CC-202 | 55 | Stellent Image Management and BPM | $2,024 | $111,320 |
| CL 101 | 80 | Stellent Client License | $150 | $12,000 |
| ASDK | 1 | SDK | $12,500 | $12,500 |
| ACST111 | 2 | ecCapture -level III | $5,995 | $11,990 |
| ACIS002 | 3 | ecIndex - | $2,695 | $8,085 |
| ACIM001 | 1 | ecImport server | $3,995 | $3,995 |
| ACAF001 | 1 | AutoFile server | $6,995 | $6,995 |
| 8926A008AA | 2 | Canon 9080C scanner w/VRS | $10,620 | $21,240 |
| | 1 | Solution discount if purchased before 12/30/04 | ($22,575) | ($22,575) |
| | 1 | Annual Hardware and Software Support | $35,677 | $35,677 |
| | | Installation, Training and Initial workflow set-up will be billed at $150 per hour, as necessary, at the end of each month. | | |
| | | Note: Shipping and all applicable taxes will be added. | | |
| SubTotal | | | | $201,227 |

| Item No. | Quantity | Description/Serial Number | Unit Cost | Amount |
|---|---|---|---|---|
| | 1 | DocuWare to Stellent conversion process and software<br><br>ISC and IAI project participation to be determined. Annotated document capture facility to be developed jointly with IAI. | $25,000 | $25,000 |
| | 80 | Stellent Professional Services for overview, coaching, code review and process design as necessary | $225 | $18,000 |
| | | *Note: Shipping and all applicable taxes will be added.* | | |
| SubTotal | | | | $43,000 |

*After agreeing, the parties continued to fine tune their agreement.*

At this point, the parties had not yet decided how ISC would take part in the file change-over. On January 4, 2005, Black sent an e-mail to Fouts confirming the contract. In the e-mail, Black wrote:

"I am very pleased this opportunity has been approved—it will benefit [Inter-Americas] greatly for many years. I have attached the invoice for the software only (professional services will be billed as needed), the sales order for the software and a sales order that estimates the professional hours and the option for Stellent participation if beneficial to [Inter-Americas].

"I would like to review the desired schedule of events;
1. Meeting with [Inter-Americas] and ISC technical support to outline the process, roles and responsibilities and target dates.
2. Review the level of training accomplished. What skills sets are available from each team to complete the installation, set-up(s) and training?
3. Sequence for applications; set-up, training and workflow?
4. Review the scanner installation and training
5. Review the migration process and, again, roles and responsibilities.

"My role, I believe, is to work with my team to exceed your expectations. We have a lot of work to do, but with great benefit to [Inter-Americas]."

With sales tax, the total amount due for the Stellent software, licenses, hardware, and annual hardware and software support was

$213,904.31. In the sales order for these items, Black stated that "Installation, Training and initial workflow set-up will be billed at $150 per hour, as necessary, at the end of each month."

Within his e-mail and attachments, Black set no deadlines for delivery of the hardware, when ISC would install the Stellent software, or when the DocuWare information would be imported into the new Stellent files.

On February 23, 2005, Inter-Americas paid ISC $213,904.31, the amount owed for the Stellent software, hardware, licenses, and annual hardware and software support.

*ISC wanted to continue to perform after Inter-Americas paid.*

Shortly after Inter-Americas bought the Stellent system, ISC wanted to continue with the project. Black sent e-mails to Fouts on February 10 and 24, 2005, expressing ISC's desire to begin performing on the contract. The messages confirmed that Inter-Americas was in charge of establishing a schedule to meet and discuss installing the hardware, the Stellent software, and converting Inter-Americas' existing information. Inter-Americas did not respond to Black's e-mails or other inquiries ISC made.

Beham was the Inter-Americas employee in charge of the changeover and overseeing the installation of the new equipment and Stellent software. During the first part of 2005, Beham was busy installing new telephones at Inter-Americas (ISC had nothing to do with this), and his wife was pregnant and due to give birth during this time. Beham planned to take time off when his child was born.

Representatives of Inter-Americas finally told Black converting its telephone took longer than they had expected. Once Inter-Americas installed the telephones and Beham's child was born, Inter-Americas told ISC it was ready to work on the file changeover. This caused at least 4 months of delay in the changeover.

The parties finally met on May 3, 2005. At this meeting, they discussed how to extract comments from the DocuWare program and import them into the Stellent files. Gene Christian, an employee of ISC, announced that he had been unable to extract the notes out of the DocuWare program. Ryan Jordan, an Inter-Amer-

icas employee, volunteered to figure out a way to extract the comments from DocuWare. He was eventually successful in doing so.

At the meeting, the parties agreed Stellent itself should write the program for importing the extracted notes into Inter-Americas' new Stellent system. During June and July 2005, Inter-Americas and ISC discussed developing such a program with Stellent. Stellent gave a bid of $12,600 for creating the program on August 8, 2005.

Black vainly sought approval from Fouts for this cost. Unable to get a response, Black sent a proposed "Sales & Installation Order" to Inter-Americas on August 28, 2005. On September 19, 2005, Black claims he got Inter-Americas' approval from Fouts for Stellent to continue and write the software. Fouts now claims she never responded to Black's request to approve the bid. ISC paid Stellent $12,600 to create the program to import the DocuWare notes into the Stellent imaging files.

Between July and September 2005, ISC delivered all the hardware that Inter-Americas had ordered from it. ISC also delivered and installed a portion of the Stellent Software. However, there was still Stellent software yet to be installed.

*Inter-Americas stops ISC from performing under the contract.*

On September 28, 2005, Christian (from ISC) sent Beham (from Inter-Americas) an e-mail updating him on the DocuWare to Stellent change-over. Christian stated that "Gerald (with Stellent) is working on the program to bring in the annotations, and is planning to have it ready to test by the end of October. My current goal is to have the jpg/tiff conversion ready to test the week of the 17th."

But on October 5, 2005, Inter-Americas' general counsel sent a letter to ISC claiming that ISC breached its contract because it was not performing the contract in a timely manner and, thus, Inter-Americas was entitled to rescind its agreement with ISC. Inter-Americas demanded that ISC pay $225,405.88 in damages within 10 days or Inter-Americas would start legal action. At no time before the October 5 letter did anyone at Inter-Americas' ever complain to ISC or signal that ISC's performance was untimely or

inadequate, nor did Inter-Americas ever notify ISC that it was rejecting any of the Stellent software, licenses, or hardware.

Black responded to Inter-Americas on October 14, 2005, by denying that ISC was in breach of its contractual duties to Inter-Americas. He stated:

"Any failure to timely implement the proposed solution has been due to [Inter-Americas], not ISC. ISC stands ready to complete the implementation and proposes that it be allowed to do so. Clearly, ISC would need [Inter-Americas'] cooperation consistent with [Inter-Americas'] stated requirement that it be directly involved in the implementation.

"Please contact me to discuss how we may achieve a mutually beneficial completion of this project."

On January 5, 2006, Inter-Americas filed suit against ISC in Sedgwick County District Court, claiming that ISC breached its contract with Inter-Americas by failing to deliver and install the promised Stellent system. ISC filed an answer denying Inter-Americas' allegations and a counterclaim, stating that it was Inter-Americas who breached the contract because it did not allow ISC to complete the installation, training, and first workflow setup as described in the December 30, 2004, contract.

The court granted summary judgment to ISC.

*When deciding summary judgment appeals we follow the same rules as the district court.*

On appeal, the same summary judgment rules apply to an appellate court that apply to the district court. We review them. Summary judgment is proper when the pleadings, interrogatory answers, admissions on file, and affidavits show there is no genuine issue about any material fact and the moving party is legally entitled to judgment. The court must resolve all facts and inferences which might reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to show a dispute about a material fact. To preclude summary judgment, the facts subject to the dispute must be material to the decisive issues in the case. *Welch v. Via Christi Health Partners, Inc.*, 281 Kan. 732, 736-37, 133 P.3d 122 (2006).

The parties frame different issues in this appeal. Inter-Americas claims this contract is ambiguous and extrinsic evidence must be used to understand it. It thinks the district court should have considered pre- and postcontract discussions of the parties when interpreting their agreement. Inter-Americas contends the district court was wrong when it ruled ISC was performing timely. Further, it thinks the court erred when it allowed ISC to raise new issues in its reply brief that it did not raise in its initial motion for summary judgment. Going further, Inter-Americas thinks the UCC does not govern this transaction. Also, it contends the district court made an inconsistent finding of fact and conclusion of law when it applied the UCC to this case. Finally, Inter-Americas believes the court erred when it held K.S.A. 84-2-309 required Inter-Americas to give ISC a notice of termination and a right to cure.

On the other side, ISC contends Inter-Americas failed to controvert any of its contentions of fact and this court should, as the district court did, adopt them *in toto*. Next, ISC believes that Inter-Americas failed to argue to the district court that the UCC does not apply to this case and therefore should not be able to make that argument to us. Further, it argues that when a contract can be construed in only one way, a court should not consider parol evidence about the contract. Finally ISC contends Inter-Americas breached their contract when it unilaterally terminated the contract during performance without notice of unsatisfactory performance and no chance to cure any poor performance.

*We make first some general observations about the contract and the proceedings in district court.*

We do not think this contract is ambiguous or unclear in any way, as Inter-Americas contends. Clearly, it bought hardware, software, licenses, training, and continued help with the development of a new document image computer system from ISC. ISC delivered everything it promised and was continuing to work on the project. Further, the parties' plain dealing with each other shows Inter-Americas paid as it promised and never complained about ISC's performance. No extrinsic evidence is needed to interpret this contract. Pre- and postcontract conversations are not needed

here to understand this agreement. The district court was correct on this point.

In its brief, Inter-Americas argues that Black's November 10 and 18, 2004, memos show that ISC was not performing in a timely fashion because it said implementation of the Stellent software would begin only a few weeks after the software was ordered. This argument ignores the fact that after the parties made the contract, Inter-Americas acted in a way that delayed ISC from beginning implementation of the Stellent software. The time lines contained in the precontract memos are simply not relevant or material to showing whether ISC was performing in a timely manner between December 30, 2004, and October 5, 2005. In dealing with summary judgment, we must look at material facts. Once these parties agreed in December 2004, they both continued performing according to their agreement until the lawyer's letter in October 2005.

Also, we note that ISC shifted its position after it filed its motion for summary judgment in district court. In its motion, ISC contended there were two contracts in this case. The first was the agreement of December 30, 2004. The second came later and dealt with the DocuWare conversion process. Inter-Americas in its reply contended there was only one contract. Then, at the oral argument at district court, ISC shifted its position, conceding there was only one contract, arguing the UCC did apply and Inter-Americas had breached the agreement by failing to notify it of any poor performance and not giving ISC a chance to cure. These are the "new issues" that Inter-Americas complains about. Inter-Americas wants us to rule it was an error by the district court to entertain such an argument. But it cites no authority for this position.

The only cases cited by Inter-Americas all deal with appellate briefs, not trial briefs. Parties can change positions before trial and often must as new facts are discovered and the lawsuit progresses to trial. Imposing a "no-change rule," as requested by Inter-Americas, for summary judgment motions makes no sense. If it felt blind sided by this tactic, Inter-Americas should have asked for a continuance of the oral argument. But it did not do so. If no continuance had been granted, we could have then reviewed the matter as an

abuse of discretion. As it is now, we must proceed with our evaluation. We find no error here.

*The UCC governs this contract.*

We hold the UCC controls the parties' agreement. Article 2 (Sales) of the UCC applies in Kansas to transactions involving goods. See K.S.A. 84-2-102. Goods are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) and things in action." K.S.A. 84-2-105(1). Our Supreme Court considers computer software as "goods" subject to the UCC even though incidental services are provided with the sale of software. *Wachter Management Co. v. Dexter & Chaney, Inc.*, 282 Kan. 365, 369, 144 P.3d 747 (2006). A contract involving both software and services will be governed by the UCC if "without the purchase of the software, the services would have been unnecessary." 282 Kan. at 369; see *System Design v. Kansas City P.O. Employees Credit Union*, 14 Kan. App. 2d 266, 272, 788 P.2d 878 (1990).

Here, the contract between Inter-Americas and ISC included not only the sale of the Stellent software, hardware, and licenses, but also the installation of the Stellent system and converting the information contained on the DocuWare program to the new Stellent files. The installation and changeover would have been unnecessary if Inter-Americas had not bought the Stellent system. $35,000 for various services in a $240,000 contract convinces us these services were incidental. Thus, the UCC governs the contract between the parties.

*The UCC calls for a "reasonable time" interpretation of the agreement.*

When a contract is silent about when a shipment, delivery, or any other action is to take place, the time span for doing such will be within a reasonable time under K.S.A. 84-2-309(1). Further, K.S.A. 84-1-204(2) states that what is a reasonable time for taking any action depends on the nature, purpose, and circumstances of such action. Our cases say deciding what is a reasonable time is

usually a question of fact for the jury. *Arnold v. S.J.L. of Kansas Corp.*, 249 Kan. 746, 750, 822 P.2d 64 (1991). But if the facts are not in dispute, the issue of what is reasonable becomes a question of law. 249 Kan. at 750.

Here, Inter-Americas made a contract with ISC on December 30, 2004, for the purchase of hardware, software, and licenses, as well as installation and conversion services. There were no deadlines for completion of any part of the contract. Indeed, after entering the contract, the parties were still working out what their roles would be concerning the changeover.

Shortly after Inter-Americas made its purchase, ISC wanted to advance the project. Black sent e-mails to Fouts in February 2005 to confirm that Inter-Americas was in charge of setting up a schedule to meet and discuss installing the hardware, software, and converting the DocuWare information. No one at Inter-Americas responded to Black's e-mails. We believe the new telephone system and Beham's new child were greater priorities than the DocuWare conversion for Inter-Americas at this time.

Progress was being made. During June and July 2005, Inter-Americas and ISC discussed with Stellent developing such a program, and on August 8, 2005, Stellent put in a bid of $12,600 to ISC to create the program. Black tried contacting Fouts for approval of this cost but was unable to get a response. On September 28, 2005, Christian sent Beham an e-mail telling him that he was planning to have it ready to test by the end of October. Between July and September 2005, ISC delivered all the hardware that Inter-Americas had ordered. ISC also delivered all the software and installed a portion of it.

The only conclusion we can draw from these facts is that, despite Inter-Americas' many delays in communicating and meeting with ISC, ISC's performance under the contract was continuing reasonably. Thus, ISC was not in breach of the contract when Inter-Americas sent its demand letter on October 5, 2005. Because Inter-Americas never complained to ISC or suggested that ISC's performance was untimely or inadequate before October 5, our conclusion is confirmed. We believe Inter-Americas' silence points out that ISC was performing its duties under the contract at a

reasonable pace and was not in breach of the contract before October 5. See K.S.A. 84-2-202(a) (terms of a contract may be explained or supplemented by the parties' course of dealing or course of performance). The district court was correct when it granted summary judgment to ISC on Inter-Americas' claims of breach of contract. ISC did not breach the parties' agreement.

*Since ISC is not in breach of its contract, it should be granted judgment on its counterclaim.*

Kansas courts do not approve of any contracting party trying to prevent the other party to a contract from completing its contractual duties. In *Kansas Baptist Convention v. Mesa Operating Limited Partnership*, 253 Kan. 717, 725, 864 P.2d 204 (1983), the court stated:

" 'Kansas courts imply a duty of good faith and fair dealing in every contract. Parties shall not "intentionally and purposely do anything to prevent the other party from carrying out his or her part of the agreement, or do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." ' [Citation omitted.]"

Further, if Inter-Americas believed ISC was in breach of the contract, under the UCC it had a duty to tell ISC of its breach. See K.S.A. 84-2-602(1). Such notice must be "seasonable" as contemplated by K.S.A. 84-1-204(3) (within the time agreed or within a reasonable time). With such notice, the law allows ISC the right to cure any claimed breach if it could do so within the time for performance under the contract or within a reasonable time if it had reasonable grounds to believe that Inter-Americas was satisfied with its performance. See K.S.A. 84-2-508:

"(1) Where any tender or delivery by the seller is rejected because of nonconforming use and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a confirming delivery.

"(2) Where the buyer rejects a nonconforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender."

In this case, Inter-Americas, without any warning that it was displeased with ISC's performance, improperly ended the contract. Thus, it prevented ISC from completing the contract and receiving the benefits of its labor. Therefore, the district court did not err in granting summary judgment in favor of ISC on its counterclaim against Inter-Americas.

*We think the district court went too far when it granted counterclaim damages to ISC.*

ISC counterclaimed for $75,913 in damages for Inter-Americas' termination of the contract. Brown arrived at that figure by first assessing $20,313 for lost services to install Stellent software and licenses and provide training to Inter-Americas employees. To this, it added $43,000 from Black's second sales and installation order. Finally it added on the $12,600 that ISC paid to Stellent for its work on the custom software.

We have doubts about the claimed damages. In his affidavit attached to the motion for summary judgment, Brown simply stated the figures. This damages figure was disputed by Inter-Americas. But in his deposition, Brown, while referring to the $43,000, said those were "budget numbers, it could be that much or more depends on who was going to do what." It appears to us that the district court found the affidavit more persuasive than the deposition. The court weighed the facts. On a motion for summary judgment, courts cannot weigh the evidence. *Caplinger v. Carter,* 9 Kan. App. 2d 287, 293, 676 P.2d 1300, *rev. denied* 235 Kan. 1041 (1984). Neither can we. Evidence presented to a factfinder is called for here.

Further, if the issue depends upon what Brown was feeling when he gave his deposition, we must point out that " '[a] court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue necessitates a determination of the state of mind of one or both of the parties.' [Citation omitted.]" *Brennan v. Kunzle,* 37 Kan. App. 2d 365, 378, 154 P.3d 1094, *rev. denied* 284 Kan. 945 (2007).

For these reasons we must reverse the trial court on its summary judgment for damages on ISC's counterclaim and remand that issue for trial.

We affirm in part, reverse in part, and remand with directions.